# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

| | |
|---|---|
| **ANDREA BELLITTO** and **AMERICAN CIVIL RIGHTS UNION,** *in its individual and corporate capacities*<br>Plaintiffs,<br><br>v.<br><br>**BRENDA SNIPES,** *in her official capacity as the SUPERVISOR OF ELECTIONS of BROWARD COUNTY, FLORIDA*<br>Defendant. | CASE NO.: 0:16-CV-61474-BB |

## 1199SEIU UNITED HEALTHCARE WORKERS EAST'S MOTION TO DISMISS COUNT I

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Intervenor-Defendant 1199SEIU United Healthcare Workers East ("1199SEIU") respectfully moves, by and through its undersigned counsel, to dismiss Count I of the First Amended Complaint for failure to state a claim upon which relief may be granted for the reasons stated in the accompanying Brief in Support of Motion to Dismiss Count I.[1]

Dated: September 21, 2016.

                    Respectfully submitted,

                    */s/ Kathleen M. Phillips*
                    Kathleen M. Phillips, Esq.
                    Florida Bar No.: 287873
                    Phillips, Richard & Rind, P.A.
                    9360 SW 72nd Street, Ste. 283
                    Miami, FL 33173
                    T. (305) 412-8322
                    Email: kphillips@phillipsrichard.com

---

[1] 1199SEIU has intervened solely with respect to Count I of the Amended Complaint and takes no position on Count II of the Amended Complaint.

*Of Counsel:*

Alvin Velazquez, Associate General Counsel*
Trisha Pande, Law Fellow*
Service Employees International Union
1800 Massachusetts Ave, NW
Washington, D.C. 20036
T. (202) 730-7470
Email: alvin.velazquez@seiu.org
Email: trisha.pande@seiu.org

Michelle E. Kanter Cohen, Election Counsel**
Catherine M. Flanagan, Sr. Election Counsel**
PROJECT VOTE
1420 K Street N.W., Suite 700
Washington, D.C.  20005
T. (202) 546-4173
Email: mkantercohen@projectvote.org
Email: cflanagan@projectvote.org

Stuart C. Naifeh, Senior Counsel*
Scott Novakowski, Counsel*
Cameron A. Bell, Legal Fellow*
DEMOS
220 Fifth Avenue, 2nd Floor
New York, NY  10001
T. (212) 485-6023
Email: snaifeh@demos.org
Email: snovakowski@demos.org
Email: cbell@demos.org

*\* Admitted Pro Hac Vice*
*\*\* Pro Hac Vice application to be filed*
*Counsel for Intervenor 1199SEIU United*
*Healthcare Workers East*

## **CERTIFICATE OF SERVICE**

I certify that on the 21th day of September, 2016 the foregoing was filed via the Court's CM/ECF filing system which will send a notification of filing to all counsels of record listed in the attached service list.

*/s/ Kathleen Phillips*
Kathleen M. Philips, Esq.

## **SERVICE LIST**

*Counsel for Plaintiffs*

William E. Davis (Fla. 191680)
Mathew D. Gutierrez (Fla. 0094014)
FOLEY & LARDNER LLP
Two South Biscayne Boulevard, Suite 1900
Miami, FL 33131
T. (305) 482-8404
F. (305) 482-8600
Email: wdavis@foley.com
Email: mgutierrez@foley.com

J. Christian Adams
Joseph A. Vanderhulst
PUBLIC INTEREST LEGAL FOUNDATION
209 W. Main Street
Plainfield, IN 46168
T. (317) 203-5599
F. (888) 815-5641
Email: adams@publicinterestlegal.org
Email: jvanderhulst@publicinterestlegal.org


H. Christopher Coates
LAW OFFICE OF H. CHRISTOPHER COATES
934 Compass Point
Charleston, SC 29412
T. (843) 609-7080
Email: curriecoates@gmail.com

*Counsel for Defendant*

Burnadette Norris-Weeks (Fla. 0949930)
BURNADETTE NORRIS-WEEKS, P.A.
401 North Avenue of the Arts
Fort Lauderdale, FL 33311
T. (954) 768-9770
F. (954) 786-9790
Email: bnorris@bnwlegal.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | |
|---|---|
| **ANDREA BELLITTO** and **AMERICAN CIVIL RIGHTS UNION,** *in its individual and corporate capacities*<br>    Plaintiffs**,**<br><br>       v.<br><br>**BRENDA SNIPES,** *in her official capacity as the SUPERVISOR OF ELECTIONS of BROWARD COUNTY, FLORIDA*<br>    Defendant. | CASE NO.: 0:16-CV-61474-BB |

**1199SEIU UNITED HEALTHCARE WORKERS EAST'S
BRIEF IN SUPPORT OF MOTION TO DISMISS COUNT I**

Intervenor 1199SEIU United Healthcare Workers East ("1199SEIU") respectfully submits this Brief in Support of its Motion to Dismiss Count I for the following reasons:

I.   INTRODUCTION

Congress passed the National Voter Registration Act of 1993 ("NVRA") to increase opportunities for voter registration and provide greater avenues for electoral participation. 52 U.S.C. § 20501. The NVRA achieves this purpose by regulating state voter-roll maintenance programs and specifically requiring states to maintain accurate voter registration rolls. Maintaining accurate rolls, according to the NVRA, requires not only removing voters who have become ineligible, but also ensuring that voters, once registered, remain on the rolls as long as they continue to be eligible. S. REP. NO. 103-6, at 19 (1993); *see also* H.R. REP. NO. 103-9 (1993), at 18, *reprinted in* 1993 U.S.C.C.A.N. 105, 122. To that end, the NVRA permits states to remove voters from the rolls only for particular reasons and in accordance with particular procedures, which are explained in Section 8. Indeed, the NVRA provides an explicit safe harbor procedure by which states and jurisdictions can comply with Section 8's affirmative list-maintenance

requirements by using information provided by the Unites States Postal Service's National Change of Address Program ("NCOA"). *See* 52 U.S.C. § 20507(c)(1). Defendant is implementing this prescribed procedure. Pls.' First Amended Complaint ("Am. Compl."), Exh. B. Plaintiffs in this case, however, overlook the NVRA's safe harbor. The Plaintiffs instead want the Defendant to exercise her lawful discretion in particular ways, and maintain the rolls by using processes and data that the NVRA does not endorse. In sum, they claim that she is violating the NVRA because she is using her lawful discretion in a manner with which they disagree. Their contention is both false and inadequate to state a claim under the NVRA. Therefore, Count I of Plaintiffs' First Amended Complaint should be dismissed on the grounds set forth in this Brief.[1]

## II. STATEMENT OF FACTS

On January 26, 2016, the American Civil Rights Union ("ACRU") sent a letter to Dr. Brenda Snipes, Supervisor of Elections for Broward County, Florida, notifying her that "[Broward C]ounty is in apparent violation of Section 8 of the National Voter Registration Act." Am. Compl., Exh. A. The violation, the ACRU explained, was that the County "has an implausible number of registered voters compared to the number of eligible living citizens," based on "publicly available data from the U.S. Census Bureau." Am. Compl., Exh. A. The letter concluded with a request for information and documents about the County's list-maintenance activities.

On February 3, 2016, Dr. Snipes responded to the ACRU's letter and provided nearly twenty pages of certification statements—documents that each county must submit to the Florida Chief of Voter Registration Services every six months. Am. Compl., Exh. B. These certificates, covering the period from January 1, 2011, to December 31, 2015, indicated that Broward County

---

[1] 1199SEIU joins Defendant's Motion to Dismiss Count I of the Complaint solely on the grounds stated in this Brief rather than those set forth by Defendant. 1199SEIU takes no position on Defendant's Motion to Dismiss Count II of the Complaint.

2

used a variety of data sources to maintain its voter registration rolls.  Specifically, the certificates demonstrated that Broward County used (1) change-of-address information from the United States Postal Service's NCOA Program *and* (2) targeted, nonforwardable address-confirmation requests returned as undelivered after being sent to registered voters who had not voted or requested an update to their records within the last two years.[2]  Am. Compl., Exh. B.  Nonetheless, despite the undisputed documentation showing that Broward County was complying with its obligations under the NVRA, the ACRU filed its Complaint against Dr. Snipes, claiming that the County was violating the law.

ACRU filed a First Amended Complaint on August 4, 2016.  The Amended Complaint alleges that Broward County's voter roll has "contained either more total registrants than eligible voting-age citizens or, at best, an implausibly high number of registrants," according to "publicly available data disseminated by the United States Census Bureau and the federal Election Assistance Commission."  Am. Compl., ¶ 11. Plaintiffs allege that according to the same data, at the time of the 2014 general election, the number of registered voters in Broward County was approximately 103% of Broward County's population of voting age citizens, and at the time of the 2010 general election, the number of registered voters was approximately 106% of the voting-age citizen population. Am. Compl., ¶¶ 11-12.  Plaintiffs also allege that Defendant has not undertaken particular list-maintenance activities that Plaintiff would prefer Dr. Snipes pursue, such as using information about persons who allegedly had moved or died provided by private parties, or using jury lists to conduct purges. *See* Am. Compl. ¶¶ 13, 19.  Dr. Snipes filed a Motion to Dismiss on August 18, 2016.

---

[2] Florida's nonforwardable address-confirmation request is distinct from the confirmation procedure outlined in subsection 8(d)(2) of the NVRA.  52 U.S.C. § 20507(d)(2).

3

On September 19, 2016, Intervenor 1199SEIU United Healthcare Workers East ("1199SEIU") filed a Motion to Intervene as a defendant to protect its members and eligible voters from any unjustified and unlawful purges, and now files its Motion to Dismiss Count I. *See* Mot. of 1199SEIU to Intervene. That motion was granted on September 21, 2016. *See* Order Granting Mot. to Intervene.

### III. STANDARD OF REVIEW

"When reviewing a motion to dismiss, a court as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff." *Alhassid v. Bank of America N.A.*, 60 F. Supp. 3d 1302, 1310 (S. D. Fla. 2014). As the United States Supreme Court has stated, Plaintiffs' complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Complaint's well-pleaded facts, however, must demonstrate that a legal violation is not merely possible but plausible. *See American Dental Ass'n. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009)). Indeed, "[c]ourts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would have the court infer." *American Dental Ass'n*, 605 F.3d at 1290 (internal quotations omitted). Finally, in evaluating a motion to dismiss, a court may consider documents attached to the complaint. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997) ("the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto").

### IV. VOTER ROLL MAINTENANCE UNDER THE NVRA

Although the NVRA requires election officials to ensure that a reasonable effort is made to remove ineligible voters from the registration rolls, *see* 52 U.S.C. § 20507(a), the statute

4

provides that election officials cannot remove the names of registrants except in a few enumerated circumstances:

- If the registrant requests to be removed;
- If the registrant is convicted of a crime or adjudicated mentally incompetent, and state law prevents such individuals from voting;
- If the registrant has died; or
- If the registrant's residence has changed, *and*
    - The registrant confirms in writing that she has changed residence to a place outside the registrar's jurisdiction (i.e., the county), or
    - The registrant fails to respond to written notice from the registrar *and* fails to vote in any election in the subsequent period that includes two general Federal elections.

With these strictures in place, the NVRA requires election officials to "conduct a general program" for roll maintenance to remove voters who have moved or died. *Id*. § 20507(a)(4). The NVRA gives officials discretion to use a variety of databases or procedures to identify voters who are believed to be ineligible. It provides clear guidelines that set the floor: any roll-maintenance program must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act . . . ." *Id.* § 20507(b)(1). Additionally, the NVRA expressly provides that list-maintenance programs cannot result in the removal of any registrant due to the person's failure to vote.[3] *Id.* § 20507(b)(2). Beyond that, however, election officials have discretion to use certain data sources while choosing not to use others.

The NVRA also identifies what the Department of Justice has called a "safe harbor program," which, by the statute's own terms, will fully satisfy the law's requirement that election officials conduct a "general program" to remove voters who have become ineligible because they

---

[3] This limitation does not prohibit the use of failure to vote as part of the statutory waiting period after a compliant change-of-address notice, as described in 52 U.S.C. § 20507(d)(2), is sent based on appropriate grounds. 52 U.S.C. § 20507(b)(2).

5

have moved.  Specifically, subsection 8(c) allows states to use NCOA data, provided by the United States Postal Service, to identify registrants who may have changed residence.  *Id.* § 20507(c)[4]; *see also* U.S. Dep't. of Justice, "The National Voter Registration Act of 1993 (NVRA)" ¶ 33, *available at* https://www.justice.gov/crt/national-voter-registration-act-1993-nvra.  Once an election official has reason to believe a voter has moved based on data from the NCOA program, the official must follow the precise procedure described in subsection 8(d).  Under that process, the election official sends a postage pre-paid notice, by forwardable mail, to the voter.  Unless the voter responds to the notice confirming that she has moved, the election official *cannot* remove the voter from the registration rolls until two general federal elections have passed in which the voter has neither responded nor voted.  This protective procedure necessarily requires that a voter who has not affirmatively notified the Supervisor of Elections that she has moved will remain on the registration rolls until the mandatory waiting period has passed.

If the election official uses NCOA data as a basis for identifying voters who may have moved, the requirements of Section 8(a)(4) are satisfied: By the express terms of Section 8(c), this process is sufficient to comply with the NVRA's mandate to identify and remove voters who have moved outside the jurisdiction; the state need take no other action to remove voters who may have moved.[5]  *See* 52 U.S.C. § 20507(c)(1); *see also Dobrovolny v. Nebraska*, 100 F. Supp. 2d 1012,

---

[4] Section 8(c)'s "safe harbor provision" provides that, "A State may meet the requirements of subsection (a)(4) by establishing a program under which . . . change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose address may have changed" and, for registrants who may have moved to a different jurisdiction, the registrar may use the confirmation mailing procedures in subsection (d)(2) to confirm the change. 52 U.S.C. § 20507(c)(1).

[5] While not required, states may use additional or alternative processes to identify voters who may have moved, and many states do.  U.S. Dep't. of Justice, "The National Voter Registration Act of 1993 (NVRA)" ¶34, *available at* https://www.justice.gov/crt/national-voter-registration-act-1993-nvra. For example, as discussed above, in addition to NCOA information, Broward County uses mail returned as undeliverable to identify voters who no longer reside at their registered address.

1020 (D. Neb. 2000) ("[T]he general program for maintaining voter registration lists must include a process for removing the names of persons who have moved. A state begins this process by mailing a notice to all persons believed to have moved. Either [NCOA] information from the post office, or the results of a mass mailing to all registered voters, can serve to identify persons believed to have moved.").

This procedure serves to protect eligible citizens from losing their right to vote and seeks to ensure that as long as voters remain eligible, they are able to remain registered and vote.

### V.     PLAINTIFFS' COUNT I FAILS TO STATE A CLAIM UNDER THE NVRA.

The Plaintiffs' unsubstantiated assertion that there are too many voters on the Broward County rolls and Plaintiffs' contention that the Defendant's failure to, *in her discretion*, use additional—but not required—data to regulate the registration lists are insufficient to state a claim for relief under the NVRA.

As described above, the NVRA explicitly provides that the use of NCOA information satisfies the roll-maintenance requirement. 52 U.S.C. § 20507(c). Documentation from the Plaintiffs' own Complaint demonstrates that Broward County uses NCOA information to maintain the voter registration rolls. *See* Am. Compl., Exh. B (demonstrating that Broward County used NCOA information to conduct roll maintenance as recently as 2015). This fact alone defeats Plaintiffs' claim that a legal violation has occurred. *See* 52 U.S.C. § 20507(c)(1). Moreover, the County engages in an additional mechanism—not required, but permitted by the NVRA—in which it seeks to identify voters who *may* have moved by sending a nonforwardable confirmation

---

Regardless of whether NCOA or other reliable information is used, a state must still comply with Section 8(d)'s notice-and-waiting period procedure to confirm any change in residence.

request.[6] Am. Compl., Exh. B (demonstrating that Broward County conducted an additional roll-maintenance process in 2015).

Despite these activities, Plaintiffs erroneously contend that Dr. Snipes' legally permissible choice not to use certain data that they would prefer she use amounts to a "fail[ure] to make reasonable efforts to conduct voter list maintenance programs, in violation of Section 8 of the NVRA." Am. Compl. ¶ 28.  As proof, Plaintiffs allege that Dr. Snipes "undertakes absolutely no effort whatsoever to use data available from the Broward County Circuit Court Clerk obtained from jury excusal forms," which, Plaintiffs claim, would identify "numerous Broward County residents who self-identify, under oath, that they are non-citizens or non-residents of Broward County." Am. Compl. ¶ 19.  But the NVRA's mandate does not require Dr. Snipes to consult such data.  In fact, the "general program" described in Section 8(a)(4), 52 U.S.C. § 20507(a)(4), is intended to identify and remove registrants who have died or who have become ineligible due to change of residence.  Jury excusal forms are not mentioned in the NVRA, are not required by the statute, and simply do not serve such purpose.

Similarly, Plaintiffs' claim that Defendant has failed to act on reliable information provided to her about registered voters who may have died or moved, Am. Comp ¶ 13, does not allege an NVRA violation. There is no requirement to use any particular set of information to conduct voter roll maintenance. In addition, use of such information may actually *violate* the NVRA if removals are undertaken without adherence to the requirements of Sections 8(b), (c) and (d). For example, Defendant could not simply remove any registered voters without sending the required statutory notice and waiting the prescribed two election cycles as the Plaintiffs suggest, nor could Defendant

---

[6] As noted above, this mechanism is separate and distinct from the confirmation notice required by subsection 8(d)(2) of the NVRA.  52 U.S.C. § 20507(d)(2).

8

undertake a removal program that was not uniform and nondiscriminatory. *See* 52 U.S.C. § 20507(b)(1), (d).

Plaintiffs also claim that data from the U.S. Census Bureau and U.S. Election Assistance Commission indicate Broward County's voter roll has "contained either more total registrants than eligible voting-age citizens or, at best, an implausibly high number of registrants." Am. Compl., ¶ 11. Plaintiffs allege that according to the same data, at the time of the 2014 general election, approximately 103% of the citizens of voting age were registered to vote, and at the time of the 2010 general election, approximately 106% of voting-age citizens were registered. Am. Compl., ¶¶ 11-12. But this oversimplified conclusion completely disregards the procedural safeguards inherent in the two-election-cycle waiting period that Congress imposed.

The NVRA is designed to restrict and slow the removal of voters from the rolls, specifically to ensure that eligible voters are not improperly disenfranchised. Under the NVRA, when a registrant moves out of Broward County, unless that registrant either (1) explicitly requests, in writing, to be removed from the rolls, 52 U.S.C. § 20507(a)(3)(A), or (2) responds to the written notice sent by the Supervisor confirming that they no longer reside in Broward County, *id.* § 20507(d)(1)(A), the registrant cannot be removed from the official list of eligible voters for two federal general elections after the date of the notice, *id.* § 20507(d)(1), a period of anywhere from just over two to four years after the notice is sent.

Thus, it is entirely plausible, if not likely, that the number of registrants could *exceed* the eligible voting age population in a jurisdiction with high voter participation and a relatively transient population. Such a situation could just as easily be the result of compliance with the NVRA as a supposed violation. As one court explained, "The NVRA makes it inevitable that voter registration lists will be inflated because of its requirement that States wait to remove a

9

voter's name who has not responded to an 8(d)(2) notice until that voter fails to vote in two successive federal elections." *United States v. Missouri*, No. 05-4391-CV-C-NKL, 2007 WL 1115204, at *4 n.7 (W.D. Mo. Apr. 13, 2007), *aff'd in part, rev'd in part and remanded*, 535 F.3d 844 (8th Cir. 2008). This is exactly the kind of "obvious alternative explanation[], which suggest[s] lawful conduct rather than the unlawful conduct the plaintiff would have the court infer." *American Dental Ass'n*, 605 F.3d at 1290 (internal quotations omitted). Stopping short of the line between possibility and probability, Plaintiffs' Amended Complaint simply does not comprise a "plain statement" possessing enough heft to "sho[w] that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557.

## VI. COUNT I FAILS TO STATE A CLAIM UNDER HAVA

Plaintiffs also claim a violation of the Help America Vote Act ("HAVA"), Am. Compl. ¶¶ 8, 28-29, pointing to its requirement that local officials perform computerized list maintenance on a regular basis. 52 U.S.C. § 21083(a)(2)(A). However, removal of registrants is governed by the NVRA, as HAVA expressly recognizes. 52 U.S.C. § 21083(a)(2)(A)(1) ("If an individual is to be removed from the computerized list, such individual shall be removed in accordance with the provisions of the National Voter Registration Act."). As explained above, the Plaintiffs cannot plausibly claim that the Defendant's actions constitute a violation of the NVRA. And because HAVA defers to the NVRA, there is thus no violation of HAVA.

## VII. CONCLUSION

For the reasons stated above, the Court should dismiss Count I for failure to state a claim

Dated: September 21, 2016.

          Respectfully submitted,

          */s/ Kathleen M. Phillips*
          Kathleen M. Phillips, Esq.
          Florida Bar No.: 287873
          Phillips, Richard & Rind, P.A.
          9360 SW 72nd Street, Ste. 283
          Miami, FL 33173
          T. (305) 412-8322
          Email: kphillips@phillipsrichard.com

          *Of Counsel:*

          Alvin Velazquez, Associate General Counsel*
          Trisha Pande, Law Fellow*
          Service Employees International Union
          1800 Massachusetts Ave, NW
          Washington, D.C. 20036
          T. (202) 730-7470
          Email: alvin.velazquez@seiu.org
          Email: trisha.pande@seiu.org

          Michelle E. Kanter Cohen, Election Counsel**
          Catherine M. Flanagan, Sr. Election Counsel**
          PROJECT VOTE
          1420 K Street N.W., Suite 700
          Washington, D.C.  20005
          T. (202) 546-4173
          Email: mkantercohen@projectvote.org
          Email: cflanagan@projectvote.org

          Stuart C. Naifeh, Senior Counsel*
          Scott Novakowski, Counsel*
          Cameron A. Bell, Legal Fellow*
          DEMOS
          220 Fifth Avenue, 2nd Floor
          New York, NY  10001
          T. (212) 485-6023
          Email: snaifeh@demos.org
          Email: snovakowski@demos.org
          Email: cbell@demos.org

          *\* Admitted Pro Hac Vice*
          *\*\* Pro Hac Vice application to be filed*
          *Counsel for Intervenor 1199SEIU United*
          *Healthcare Workers East*

## **CERTIFICATE OF SERVICE**

I certify that on the 21th day of September, 2016 the foregoing was filed via the Court's CM/ECF filing system which will send a notification of filing to all counsels of record listed in the attached service list.

*/s/ Kathleen M. Phillips*
Kathleen M. Phillips, Esq.

**SERVICE LIST**

*Counsel for Plaintiffs*

William E. Davis (Fla. 191680)
Mathew D. Gutierrez (Fla. 0094014)
FOLEY & LARDNER LLP
Two South Biscayne Boulevard, Suite 1900
Miami, FL 33131
T. (305) 482-8404
F. (305) 482-8600
Email: wdavis@foley.com
Email: mgutierrez@foley.com

J. Christian Adams
Joseph A. Vanderhulst
PUBLIC INTEREST LEGAL FOUNDATION
209 W. Main Street
Plainfield, IN 46168
T. (317) 203-5599
F. (888) 815-5641
Email: adams@publicinterestlegal.org
Email: jvanderhulst@publicinterestlegal.org


H. Christopher Coates
LAW OFFICE OF H. CHRISTOPHER COATES
934 Compass Point
Charleston, SC 29412
T. (843) 609-7080
Email: curriecoates@gmail.com

*Counsel for Defendant*

Burnadette Norris-Weeks (Fla. 0949930)
BURNADETTE NORRIS-WEEKS, P.A.
401 North Avenue of the Arts
Fort Lauderdale, FL 33311
T. (954) 768-9770
F. (954) 786-9790
Email: bnorris@bnwlegal.com