UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-61474-BLOOM/Valle

ANDREA BELLITTO and
AMERICAN CIVIL RIGHTS UNION,

    Plaintiffs,
v.

BRENDA SNIPES, in her official capacity
as the Supervisor of Elections of
Broward County, Florida,

    Defendant,
v.

1199SEIU UNITED HEALTHCARE
WORKERS EAST,

    Intervenor Defendant.
_____/

## ORDER ON MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Brenda Snipes's Second Motion to Dismiss, ECF No. [16] ("Defendant's Motion"), and Intervenor Defendant 1199SEIU United Healthcare Workers East's Motion to Dismiss, ECF No. [36], ("1199SEIU's Motion") (collectively, the "Motions"). The Court has reviewed the Motions, all supporting and opposing filings, the record in this case, and is otherwise fully advised in the premises. For the reasons that follow, Defendant's Motion is granted in part and denied in part, and 1199SEIU's Motion is denied.

**I. BACKGROUND**

Plaintiff American Civil Rights Union, Inc. ("ACRU") is a non-profit corporation "which promotes election integrity, compliance with federal election laws, government transparency,

and constitutional government." ECF No. [12] ¶ 4 ("Amended Complaint"). Plaintiff Andrea Bellitto ("Bellitto") is a registered voter in Broward County and member of the ACRU. *See id.* ¶ 5. Defendant Brenda Snipes ("Snipes" or "Defendant") is the Supervisor of Elections of Broward County, Florida, and Intervenor Defendant 1199SEIU United Healthcare Workers East ("1199SEIU") is a labor union that represents approximately 25,000 healthcare workers and an additional 7,400 retired members in the State of Florida. *See id.* ¶ 6; ECF No. [23] at 6-7.

Plaintiffs ACRU and Bellitto (collectively, "Plaintiffs") initiated these proceedings on June 27, 2016 and filed an Amended Complaint thereafter, bringing two claims against Defendant under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.[1] In Count I, Plaintiffs claim that Defendant "has failed to make reasonable efforts to conduct voter list maintenance programs, in violation of Section 8 of NVRA, 52 U.S.C. § 20507 and 52 U.S.C. § 21083(a)(2)(A) [Help America Vote Act ("HAVA")]." Amended Complaint ¶ 28. In Count II, Plaintiffs claim that Defendant "has failed to respond adequately to Plaintiffs' written request for data, failed to produce or otherwise failed to make records available to Plaintiffs concerning Defendant's implementation of programs and activities for ensuring the accuracy and currency of official lists of eligible voters for Broward County, in violation of Section 8 of the NVRA, 52 U.S.C. § 20507(i)." *Id.* ¶ 33. Plaintiffs seek an order from this Court (1) declaring that Defendant is in violation of Section 8 of the NVRA; (2) ordering Defendant to implement reasonable and effective registration list maintenance programs to cure failures to comply with the NVRA and ensure that non-citizens and ineligible registrants are not on Defendant's rolls; (3) ordering Defendant to substantively respond to Plaintiffs' written request for records concerning her implementation of programs and activities to ensure the accuracy and

---

[1] As do the parties, the Court refers to 52 U.S.C. § 20507 interchangeably as "Section 8," reflecting the statute's original location at Section 8 of Pub. L. 103-31, May 20, 1993, 107 Stat. 77.

currency of Broward County's voter registration list and provide access to election records; and (4) additional relief. *See id.* at 9-10.

Defendant filed a Motion to Dismiss Plaintiffs' Amended Complaint on August 18, 2016, moving to dismiss these proceedings in their entirety under Rules 12(b)(1) and 12(b)(6) of the Federal Rules. Thereafter, 1199SEIU filed a motion to intervene, which the Court granted. *See* ECF Nos. [23], [29], [53]. 1199SEIU filed its own Motion to Dismiss on September 21, 2016, moving to dismiss Count I only of the Amended Complaint. Both Motions are now ripe for adjudication. *See* ECF Nos. [21], [22], [54], [63].

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citing *Turner v. Bank of North America*, 4 U.S. (4 Dall.) 8, 11 (1799) and *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936)). A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "A 'factual attack,' on the other hand, challenges the existence of

subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence*, 919 F.2d at 1529); *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."). "In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). As such, "[w]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1), the district court is free to independently weigh facts and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

**B.     Rule 12(b)(6)**

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a

4

right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Chaparro*, 693 F.3d at 1337; *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).  However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'"  *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)).  "The movant must support its arguments for dismissal with

5

citations to legal authority." *Id.* (citing S.D. Fla. L. R. 7.1(a)(1)).  "Where a defendant seeking dismissal of a complaint under Rule 12(b)(6) does not provide legal authority in support of its arguments, it has failed to satisfy its burden of establishing its entitlement to dismissal." *Id.* (citing *Super. Energy Servs., LLC v. Boconco, Inc.*, 2010 WL 1267173, at *5-6 (S.D. Ala. Mar. 26, 2010) and *United States v. Vernon*, 108 F.R.D. 741, 742 (S.D. Fla. 1986)). It is through these lenses that the Court considers the Motions.

### III.   DISCUSSION

Defendant Snipes argues that the Court must dismiss the Amended Complaint because Plaintiffs (1) have not alleged a cognizable claim over which the Court has subject-matter jurisdiction; (2) have failed to state a claim upon which relief can be granted; and (3) lack standing to bring their claims.  Defendant's Motion at 9.  1199SEIU also moves the Court to dismiss Count I for Plaintiffs' failure to state a claim, arguing that Plaintiffs lack a cause of action because Defendant has fully complied with the NVRA's "explicit safe harbor procedure." 1199SEIU's Motion at 1.  As the issues relate to this Court's jurisdiction, the Court first reviews Defendant's arguments that the Court lacks subject matter jurisdiction over Plaintiffs' claims, and that Plaintiffs lack standing to file suit.

#### A.   Subject Matter Jurisdiction

##### 1.   *Failure to include necessary party*

Defendant argues that the Court lacks subject matter jurisdiction because Plaintiffs failed to sue Florida's Secretary of State or the State of Florida. Defendant claims that these are the only entities that a private party can sue under the NVRA.  *See* Defendant's Motion at 9. Relatedly, Defendant argues that Plaintiff ACRU lacks standing because it did not provide pre-suit notice to Florida's Secretary of State, and that Plaintiff Bellitto lacks standing because she

did not provide pre-suit notice at all. *See id.* Unsurprisingly, Plaintiffs acknowledge that they only filed suit against Defendant Snipes, the Supervisor of Elections of Broward County, Florida, but argue that the NVRA requires nothing more. Under the circumstances of this case, the Court agrees.

At Count I of the Amended Complaint, Plaintiffs bring a claim against Defendant under Section 8 (52 U.S.C. § 20507) of the NVRA, a statute that provides requirements for the "administration of voter registration for elections for Federal office." 52 U.S.C. § 20507(a). Section 20507(a)(4) mandates that each state "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of -- (A) the death of the registrant; or (B) a change in the residence of the registrant, in accordance with subsections (b), (c), and (d)." 52 U.S.C. § 20507(a)(4). At Count II of the Amended Complaint, Plaintiffs bring a claim under 52 U.S.C. § 20507(i), which provides that:

> (1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.
>
> (2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection 5(d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

52 U.S.C. § 20507(i). Section 20510 of the NVRA governs the civil enforcement of Section 8, providing for enforcement by:

> (a) Attorney General -- The Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter.
>
> (b) Private right of action --

      1.      A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved.

      2.      If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

      3.      If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2).

52 U.S.C. § 20510. This Court's jurisdiction, therefore, stems directly from § 20510(b), and Plaintiffs' standing to bring suit depends upon compliance with the statute.

"The NVRA centralizes responsibility in the state and in the chief elections officer, who is the state's stand-in." *Scott v. Schedler*, 771 F.3d 831, 839 (5th Cir. 2014). Under the NVRA, "[t]he chief elections officer is 'responsible for coordination of State responsibilities.'" *Am. Civil Rights Union v. Martinez–Rivera*, 166 F. Supp. 3d 779, 792 (W.D. Tex. 2015) (quoting 52 U.S.C. § 20509). And, in order to bring a private action under § 20510, a party must notice "the chief election official of the State involved," which in Florida, is the Secretary of State. *See* Fla. Stat. § 97.012 ("The Secretary of State is the chief election officer of the state"). Defendant argues that based on § 20510 and the NVRA's overall structure, Plaintiffs can only file suit against the State of Florida or Florida's Secretary of State. *See* ECF No. [22] at 2. Defendant, however, has not cited to a single case that expressly supports this position. Unaware of any contrary authority, the Court finds persuasive the Honorable Alia Moses's recent analysis in a similar case filed in the Western District of Texas. In *Martinez-Rivera*, *infra*, Judge Moses analyzed the same statutory provisions and relevant case law relied upon by the parties in this

case, and found that "the NVRA itself is . . . silent on the subject of necessary parties," and that *Scott v. Schedler*, *infra*, "did not say that the Secretary of State is a necessary party to an NVRA suit." *Id.* at 793 (citing 52 U.S.C. § 20510(b) and *Scott*, 771 F.3d at 833, 839). Reviewing Texas law, the court went on to find that the local defendant in that case – the Zavala County, Texas Tax Assessor-Collector – "has certain obligations under the NVRA as the designated voter registrar and state official." *Id.* Accordingly, and "[i]n the absence of a holding to the contrary," Judge Moses declined "to dismiss the . . . Complaint on standing grounds for failure to join the Secretary of State." *Id.*; *see Ass'n of Cmty. Organizations for Reform Now v. Scott*, 2008 WL 5272059, at *2 (W.D. Mo. Dec. 17, 2008) ("The Secretary's absence from this litigation does not affect this court's ability to accord complete relief among existing parties. Plaintiffs have sued local election authorities . . . for their *own* violations of the NVRA and Missouri's implementing statutes." (analyzing 52 U.S.C. § 20506) (emphasis in the original)).

The Court similarly finds that Defendant Snipes has certain obligations under the NVRA. Defendant is the Supervisor of Elections for Broward County, Florida. In that position, Defendant is designated by Florida law to maintain the voter rolls in Broward County. *See* Fla Stat. § 98.015(3) ("the supervisor shall update voter registration information"). As Plaintiffs allege and Defendant does not challenge, list maintenance obligations in Florida are placed predominantly, and in many instances exclusively, on the Supervisors of Elections. *See, e.g.*, Fla. Stat. §§ 97.021(43) ("voter registration official" is defined as the supervisors of elections); 97.052(6) (supervisors are responsible for following up on inadequate voter registration forms); 97.0525(4)-(6) (online applications, regardless of where received, are forwarded and processed by supervisors); 97.071 (voter information cards are provided by the supervisors); 97.1031 (changes of address are received and processed by the supervisors); 98.015 (describing the office

9

and duties of the supervisors, including custody of registration-related documents); 98.035(2) (the statewide system enables the supervisors to "provide, access, and update voter registration information"); 98.045(1) (supervisors responsible for determining eligibility of applicants); 98.045(2) (supervisors responsible for removal of registrants); 98.045(3) (supervisors responsible for maintaining and providing public access to "records concerning implementation of registration list maintenance programs and activities"); 98.045(4) (street address information is provided by the supervisors to the department); 98.075(1)-(6) (supervisors remove deceased, criminal, and other ineligible registrants upon receiving information from the secretary of state); 98.075(7) (describing procedures that must be followed by supervisors for removal of registrants upon receiving notice or information of ineligibility); 98.081(1) (original registration applications are in the custody of the supervisors); 98.093(3) (supervisors have a duty to perform list maintenance regarding ineligible voters).  In fact, a Florida Supervisor is required to "conduct a general registration list maintenance program to protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records in the statewide voter registration system." Fla. Stat. § 98.065(1).  And, while the Florida Secretary of State is tasked with "coordinat[ing] the state's responsibilities under the [NVRA] . . . The secretary may delegate voter registration duties and records maintenance activities to voter registration officials.  Any responsibilities delegated by the secretary shall be performed in accordance with state and federal law."  Fla. Stat. § 97.012(7), (11); *see United States v. Missouri*, 535 F.3d 844, 849 (8th Cir. 2008) ("By its plain language, [Section 8] . . . envisions the states will actively oversee a general program wherein many of the duties not specifically assigned to the states may be delegated.").

Accordingly, the Court finds that Defendant Snipes, like the Tax Assessor-Collector of Zavala County, Texas, has certain responsibilities under Florida law. As the Florida official directly responsible for voter list maintenance in Broward County, Defendant enables the Florida Secretary of State to maintain accurate and current voter registration rolls as mandated by the NVRA. *See* 52 U.S.C. § 20507; *see also Martinez–Rivera*, 166 F. Supp. 3d at 792. In this case, the alleged violation occurred as a direct result of Defendant's actions in Broward County, and so, "[i]f the Defendant has failed to meet her obligations, ACRU can bring a civil suit against her." *Martinez–Rivera*, 166 F. Supp. 3d at 793.

2. *Standing*

Defendant also challenges Plaintiffs' standing to bring suit, on account of Plaintiffs' alleged failure to send pre-suit notice as required by § 20510(b)(1). "Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue." *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972). "The plaintiff has the burden to clearly and specifically set forth facts sufficient to satisfy Art. III standing requirements." *Id.* (internal quotations and alternations omitted). In the context of standing to bring a private action pursuant to 52 U.S.C. § 20510(b), "failure to provide notice is fatal." *Scott*, 771 F.3d at 836.

Defendant concedes that Plaintiffs have standing assuming they provided proper notice within the meaning of 52 U.S.C. § 20510(b)(1). As to Plaintiff ACRU, the Court need not decide whether notice to Defendant suffices because ACRU sent a copy of the Notice to the Florida's Secretary of State, the "chief election official" of Florida. *See* Amended Complaint ¶ 18; ECF Nos. [12-1] (the "Notice")[2] at 2 ("This letter serves as the statutory notice to your

---

[2] "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim; and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc*

county, required by 52 U.S.C. § 20510(b) . . . ."); [21] at 19; *see also Martinez–Rivera*, 166 F. Supp. 3d at 807 (adopting Magistrate's Report and Recommendation stating notification properly "sent to the Zavala County Clerk and copied to Defendant and the Texas Secretary of State"). Regarding Plaintiff Bellitto, Plaintiffs concede that Bellitto did not send notice herself, arguing instead that as a member of the ACRU, Bellitto derives standing through ACRU's notice. *See* ECF No. [21] at 20. Bellitto has the burden to clearly and specifically establish standing to bring suit, *see Sierra Club*, 405 U.S. at 731-32, but has cited only to *Scott*, *infra*, in support of her position. *Scott*, however, found that an individual plaintiff *lacked* standing to sue for failure to send notice, and that said plaintiff could not "piggyback on the NAACP's notice." 771 F.3d at 836. Bellitto appears to cite *Scott* in an effort to distinguish it, stating that there is "no indication that the individual plaintiff in the *Scott* case was a member of the organizational plaintiff." ECF No. [21] at 20. However, while it may be true that an "association has standing to bring suit on behalf of its members" under certain circumstances, *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977), it does not necessarily follow that a *member* confers standing through her membership in that organization.

Under the facts of this case, the Court finds the analysis in *Scott* persuasive and analogous to the issue of Bellitto's standing to bring a Section 8-based claim. As in *Scott*, Bellitto did not herself comply with § 20510(b)(1)'s notice prerequisite. Like the notice in *Scott*, the ACRU's letter did not mention Bellitto "by name" or even refer to ACRU members, and

---

*of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing *Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005). Here, Plaintiffs specifically refer to the Notice, and the document is central to Plaintiffs' claims. *See* Amended Complaint ¶ 18. In any event, "[w]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios*, 275 F. App'x at 880 (citing *Morrison*, 323 F.3d at 925); *see Martinez–Rivera*, 166 F. Supp. 3d at 794 ("To determine whether a party has provided adequate notice, a Court is not limited to the complaint alone, but may look to documents incorporated into the complaint by reference.").

12

Case 0:16-cv-61474-BB  Document 64  Entered on FLSD Docket 10/26/2016  Page 13 of 18

Case No. 16-cv-61474-BLOOM/Valle

thus, the Court finds the "notice letter . . . too vague to provide . . . an opportunity to attempt compliance as to [Bellitto] before facing litigation." *Scott*, 771 F.3d at 836 (internal quotations omitted); *see* ECF No. [12-1] at 1 ("Dear Ms. Snipes: I am writing on behalf of the American Civil Rights Union . . . ."). Accordingly Bellitto "has no basis for relief because [s]he did not file notice." *Scott*, 771 F.3d at 836; *see Martinez–Rivera*, 166 F. Supp. 3d at 794 n.10 ("Although the Plaintiff attempts to take credit for communication sent by third parties to the Defendant as early as 2012, it appears from the Complaint that the September 12, 2013 letter represents the first contact between the Plaintiff and the Defendant. . . . Therefore, the Court disregards the earlier communication." (citing *Scott*, 771 F.3d at 836)). Bellitto has failed to meet her burden to establish standing to bring suit. Thus, Defendant's Motion is granted as to Plaintiff Bellitto's claims.

### B.  Failure To State A Claim

Defendant also moves to dismiss the Amended Complaint under Rule 12(b)(6), arguing that the Amended Complaint "fail[s] to state how, if at all, Defendant failed to comply with any records requests," and fails to "account for the discretionary methods used by states for removal of registrants." Defendant's Motion ¶ 18; ECF No. [22] at 6. 1199SEIU similarly argues that the Court must dismiss Count I for Plaintiff's[3] failure to state a claim, as the record shows that Defendant has exercised her discretion in a manner entirely consistent with the NVRA's "safe harbor" provision at 52 U.S.C § 20507(c)(1). *See* 1199SEIU Motion at 1-2. The Court addresses the movants' arguments jointly, as appropriate.

In the Amended Complaint, ACRU claims that "Defendant has failed to make reasonable efforts to conduct voter list maintenance programs, in violation of Section 8 of NVRA, 52 U.S.C.

---

[3] As Defendant's Motion is granted as to Plaintiff Bellitto, the Court refers only to Plaintiff ACRU in the remainder of this Order.

13

§ 20507 and 52 U.S.C. § 21083(a)(2)(A)." Amended Complaint ¶ 28 (Count I). Plaintiff also claims that "Defendant has failed to respond adequately to Plaintiffs' written request for data, . . . in violation of Section 8 of the NVRA, 52 U.S.C. § 20507(i)." *Id.* ¶ 33 (Count II). Section 8 "provides an exhaustive list of circumstances justifying removal" of registered voters, and places restraints on a states' authority to remove individuals from voter lists. *A. Philip Randolph Inst. v. Husted*, ___ F.3d ___, 2016 WL 5328160, at *4 (6th Cir. Sept. 23, 2016) (hereinafter, "*APRI*"). While Count I does not list the specific subsection of Section 8 Defendant allegedly violated, Count I is entitled "Failure to Conduct List Maintenance," and Plaintiff's claims are premised on Defendant's alleged failure to use a "reasonable effort" to comply with the NVRA. ACRU's claims, therefore, fall under § 20507(a)(4) of the NVRA, requiring that election officials "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters *by reason of* -- (A) the death of the registrant; or (B) a change in the residence of the registrant, in accordance with subsections (b), (c), and (d)." 52 U.S.C. § 20507(a)(4) (emphasis added). Under § 20507(c):

> A State may meet the requirement of subsection (a)(4) by establishing a program under which --
>
> **(A)** change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed; and
>
> **(B)** if it appears from information provided by the Postal Service that --
>
> > **(i)** a registrant has moved to a different residence address in the same registrar's jurisdiction in which the registrant is currently registered, the registrar changes the registration records to show the new address and sends the registrant a notice of the change by forwardable mail and a postage prepaid pre-addressed return form by which the registrant may verify or correct the address information; or
> >
> > **(ii)** the registrant has moved to a different residence address not in the same registrar's jurisdiction, the registrar uses the notice procedure described in subsection (d)(2) to confirm the change of address.

52 U.S.C. § 20507(c)(1) ("subsection (c)(1)"). In addition to these explicit NVRA provisions, the parties dedicate extensive argument to the unwritten expanse of § 20507(a)(4) and HAVA's alleged effect on Section 8. However, for the purposes of the instant Motions, the Court finds dismissal improper because Plaintiff has alleged that Defendant failed to make a reasonable effort to remove ineligible voters by reason of death or change of address.[4] *See* 52 U.S.C. § 20507(a)(4)(A), (B). In particular, Plaintiff alleges that

> On information and belief, Defendant has been given reliable information regarding registered voters who *have either died or no longer reside at the address listed in their registration and has taken no action* to remove them as required by Florida Statutes § 98.075. On information and belief, in the Wynmoor community of Coconut Creek, for example, Defendant has received information regarding over 200 registered voters who have either died or who no longer reside in the community. . . . By failing to implement a program which takes reasonable steps to cure these circumstances, Defendant has violated NVRA and other federal list maintenance statutes.

Amended Complaint ¶¶ 13-14 (emphasis added). The Court finds this factual allegation and other claims made in the Amended Complaint are sufficient to state a claim under Section 8.

Both Defendant and 1199SEUI argue that ACRU's pleadings notwithstanding, Defendant complied with subsection (c)(1), a "safe harbor provision" that bars the claims at Count I. The parties' Motions cite to little authority in support of this position, and no authority has been presented to support dismissal at the pleading stage based on a defendant's stated compliance with subsection (c)(1). *See* 1199SEUI'S Motion at 6-7 (citing only to guidance from the Department of Justice at https://www.justice.gov/crt/national-voter-registration-act-1993-nvra, and *Dobrovolny v. Nebraska*, 100 F. Supp. 2d 1012, 1020 (D. Neb. 2000) (providing a general overview of the NVRA)). However, last month, the Sixth Circuit explicitly referred to

---

[4] The Court notes that the Sixth Circuit recently held that "[b]y the HAVA's own terms, however, [its] language is not to 'be construed to authorize or require conduct prohibited under . . . or to supersede, restrict, or limit the application of . . . [the NVRA]." *APRI*, ___ F.3d ___, 2016 WL 5328160, at *4 (alternations added and in the original) (citations omitted).

15

subsection (c)(1) as the "so-called 'safe-harbor' procedure," noting that it "provide[s] states with an example of a procedure for identifying and removing voters who had changed residence *that would comply* with the NVRA's mandates and accompanying constraints." *APRI*, ___ F.3d ___, 2016 WL 5328160, at *5 (emphasis added).  Lacking guidance from the Eleventh Circuit, the Court finds persuasive the Sixth Circuit's reasoning in *APRI*, and finds that full compliance with subsection (c)(1) "would comply with the NVRA's mandates and accompanying constraints." *Id.*  1199SEUI claims that a letter from Defendant, attached to the Amended Complaint at Exhibit B, establishes that Defendant fully complied with subsection (c)(1), and that Exhibit B is sufficient "to defeat Plaintiff['s] claim that a legal violation has occurred." ECF No. [63] at 5 (citing *APRI*).  *APRI*, however, addressed material distinct claims under Section 8 in the context of a motion for a permanent injunction.  In this case, Plaintiff does not concede that Defendant fully complied with subsection (c)(1), but rather, specifically pleads that "[b]y failing to implement a program which takes reasonable steps to cure these circumstances, Defendant has violated NVRA and other federal list maintenance statutes." Amended Complaint ¶ 14.  ACRU has plead sufficient facts to support its claim that Defendant inadequately removed the names of registrants who have died or changed their address; whether Exhibit B establishes Defendant's full compliance with subsection (c)(1) and defeats Plaintiff's claims is a fact-based argument more properly addressed at a later stage of the proceedings.  *See Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1277 (11th Cir. 2004) (court properly considers defense only where "the complaint affirmatively and clearly shows the *conclusive applicability* of the defense to bar the action" (emphasis added) (internal quotations omitted)).  Relatedly, the Court finds the factual explanation proffered by 1199SEUI in its Motion, while plausible, is insufficient to warrant dismissal of Count I, particularly as the Court must evaluate all plausible

inferences in favor of Plaintiff. *See* 1199SEUI's Motion at 9-10; *Chaparro*, 693 F.3d at 1337; *Miccosukee Tribe of Indians of Fla.*, 304 F.3d at 1084; *see also Martinez–Rivera*, 166 F. Supp. 3d at 794. Accordingly, ACRU's claims in Count I survive.

The Court also finds that Plaintiff has sufficiently stated a claim in Count II. Plaintiff asserts that Defendant "failed to respond adequately to Plaintiffs' written request for data . . . in violation of Section 8 of the NVRA, 52 U.S.C. § 20507(i)." While Defendant argues that Plaintiff failed to state "how" Defendant did not comply with Plaintiff's requests, § 20507(i)(1) requires, with exception, that Defendant "make available for public inspection . . . *all records* concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . . ." 52 U.S.C. § 20507(i) (emphasis added). Although the Amended Complaint does not specifically state that Defendant failed to provide *all* relevant records, the Court finds that Plaintiff's allegations, in conjunction with the attached Notice documenting in detail the information requested, is sufficient to state a plausible claim for relief under § 20507(i).

## IV. CONCLUSION

For all of the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Snipes's Motion to Dismiss, **ECF No. [16]**, is **GRANTED** as to Plaintiff Bellitto's claims only;

2. 1199SEUI's Motion to Dismiss, **ECF No. [36]**, is **DENIED**;

3. Defendant Snipes has until **November 4, 2016** to file an Answer to the Amended Complaint.

**DONE AND ORDERED** in Miami, Florida, this 25th day of October, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record