IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| AMERICAN CIVIL RIGHTS UNION, in its individual and corporate capacities, <br><br> *Plaintiff*, <br><br> v. <br><br> BRENDA SNIPES, in her official capacity as the SUPERVISOR OF ELECTIONS of BROWARD COUNTY, FLORIDA, <br> *Defendant*, <br><br> v. <br><br> 1199SEIU UNITED HEALTHCARE WORKERS EAST, <br><br> *Intervenor-Defendant* | Civil Action No. 16-cv-61474 |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT II OF
THE FIRST AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Plaintiff American Civil Rights Union ("ACRU"), by and through counsel, hereby moves this Court for summary judgment on Count II of its First Amended Complaint. ACRU respectfully submits that there are no genuine issues of material fact related to Count II and that it is entitled to summary judgment as a matter of law. The grounds for this motion are set forth more fully in the following Memorandum of Law.

1

## MEMORANDUM OF LAW

**I.       Introduction**

The National Voter Registration Act ("NVRA") requires that election officials provide public disclosure of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Whatever list maintenance records Defendant Snipes possesses, she is obligated to provide upon a proper request under this statute. NVRA then provides a right of action for failure to comply with this public disclosure obligation. The sole question presented by this Motion for Partial Summary Judgment is whether Defendant Snipes has complied with her disclosure obligations. More than one year after ACRU initially requested access to list maintenance records maintained by Defendant Snipes—and after repeated follow-up attempts to obtain those records—the answer to that question is beyond dispute: Defendant Snipes has failed to comply with her legal duty to provide access to *all* list maintenance records, and Plaintiff is therefore entitled to summary judgment on Count II.

**II.      Statutory Background**

Section 8 of the National Voter Registration Act contains a provision requiring election officials to publicly disclose all records related to voter registration and list maintenance activities. 52 U.S.C. § 20507(i); *see Project Vote v. Long*, 682 F.3d 331, 334 (4th Cir. 2012). The specific language provides: "Each State shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . . ." 52 U.S.C. § 20507(i)(1). If an election official maintains records for longer than two years, as Defendant Snipes has done, they are obligated to provide for the inspection of

those records as well, upon request. This mandatory public disclosure is necessary in order to preserve the right to vote and ensure that election officials are complying with the NVRA. *Project Vote*, 682 F.3d at 335. Furthermore, this provision has been interpreted by courts to be exceptionally expansive. *Id.* at 336 ("As this court has recognized the use of the word 'all' as a modifier suggests an expansive meaning because 'all' is a term of great breadth." (internal quotation marks and brackets omitted)). Accordingly, election officials must disclose records related to, but not limited to, programs and activities involving the registration of voters as well as the list maintenance of official list of eligible voters. It is no defense that the records requested are older than two years. If Defendant has list maintenance records in her possession, no matter how old, they are subject to the public disclosure obligations of the NVRA.

### III.   Factual Background

ACRU incorporates by reference the Statement of Undisputed Facts ("SUMF") accompanying this Motion pursuant to Local Rule 56.1. The material facts are summarized as follows.

More than a year after requesting public list maintenance documents required to be disclosed under the NVRA, Defendant Snipes still have not provided them to ACRU. For this statutory dereliction, summary judgment should be granted to ACRU on Count II of the First Amended Complaint.

ACRU sent a letter to Supervisor Snipes by certified mail on January 26, 2016. This letter requested a set of documents related to list maintenance. The letter asked to inspect "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." ECF No. [12-1] at 4. The letter requested provision of the following specific documents:

  (a) updated registration data since the publication of the 2014 Election Assistance Commission data from the November 2014 election;

  (b) records obtained or received from federal and state courts, including jury recusal forms, regarding lack of citizenship, death, or relocation;

  (c) the number of ineligible voters removed by category and by date;

  (d) the source agency that provided the identifying information of the removed deceased and when the data was provided;

  (e) the number of notices sent to inactive voters since the publication of the 2014 EAC Report including the date, scope, and contents of any mailing sent to all registered voters;

  (f) the names of the staff responsible for conducting list maintenance obligations;

  (g) the number of ineligible voters removed for criminal conviction, together with the underlying data and communications with law enforcement agencies;

  (h) the total number of voters registered in Broward County as of the date of any response;

  (i) any records indicating the use of citizenship or immigration status for list maintenance activities;

  (j) all list maintenance records including federal voter registration forms containing citizenship eligibility questionnaires for the last 22 months.

In addition, the letter requested that Defendant Snipes make available all other records concerning voter list maintenance programs, in accordance with the NVRA. ECF No. [12-1] at 4; *see also Project Vote*, 682 F.3d at 334-35 (holding that the NVRA requires local election

officials to provide list maintenance records to the public). The letter closed by offering to arrange a time to discuss and arrange an inspection of the requested records.

Defendant Snipes still has not provided or made available for inspection all of the documents requested in the January 2016 letter.

Other documents that would fall within the scope of the request contemplated by ACRU's letter include records such as:

1. Copies of all invoices and statements from any outside vendors Defendant Snipes works with in doing list maintenance mailings;

2. Records of complaints received regarding list maintenance issues;

3. Communications from and to the Florida Secretary of State's office, including the Florida Bureau of Voter Registration Services, concerning list maintenance in Broward County;

4. Records related to United States Postal Service National Change of Address database requests and usage; and,

5. A current list of all registered voters (active and inactive).

Defendant Snipes responded in a letter dated February 8, 2016. In pertinent part for this Motion, the letter did not include any other documents or offer to allow inspection of list maintenance records. Defendant Snipes' response included only copies of Certificates of List Maintenance from the last several years. ECF No. [12-2].

Representatives of ACRU contacted Defendant Snipes to renew the requests made by the January 26, 2016 letter and to attempt to arrange a time to conduct an inspection or duplication of requested records. In a telephone call on April 5, 2016, Defendant explicitly and forcefully declined to meet with ACRU representatives. SUMF ¶ 6.

Over two months later, and without receiving any of the requested records from Defendant Snipes, this litigation was initiated on June 28, 2016. ECF No. [1]. On October 31, 2016, ACRU served discovery requests on Defendant Snipes requesting admissions and responses to interrogatories regarding list maintenance activities, as well as requesting documents. SUMF ¶ 8. Defendant responded on December 12, 2017, but still did not produce any new documents, other than the certifications that had been already sent in response to ACRU's January 26, 2016 letter. SUMF ¶ 11. Not until mid-January 2016 did Defendant Snipes allow an inspection of her voter registration database. SUMF ¶ 13. The response was, however, silent regarding all of the originally requested records that are not part of the voter registration database.

ACRU conducted an in-person inspection of Defendant's registration database on January 13, 2017, as this was the earliest possible date that counsel for Defendant stated she would permit inspection. During the inspection, Plaintiff was not provided or permitted to inspect certain categories of requested documents because they are not contained in the registration database. SUMF ¶ 13. For example, Defendant Snipes maintains records of complaints received regarding list maintenance and any responses given and actions taken. Other documents requested required additional assembly before Defendant would make them available to the Plaintiff. SUMF ¶ 13. Accordingly, counsel for Plaintiff received a CD from the Defendant on January 26, 2017. On the CD were the following documents:

1. A .pdf file of the current active voter roll for Broward County, and
2. A .pdf file containing a table list of mailings sent out by Defendant through her vendor, Commercial Printing, since 2015. SUMF ¶ 14.

The CD still did not contain all of the records requested one year earlier in ACRU's letter.

On February 1, 2017, Plaintiff received a written, supplemental response to its October 31, 2016 Requests for Production of Documents. The supplement did not contain any documents. Although Plaintiff requested documents dated as far back as 2009, Defendant stated that she refuses to provide documents dated earlier than two years prior to the date the Complaint was filed, regardless of whether Defendant Snipes possesses these list maintenance records. Defendant claimed that any records older than two years were not subject to disclosure under the NVRA. SUMF ¶ 15. Defendant misunderstands the document production and public disclosure provisions of the NVRA and can point to no authority supporting her view. If a list maintenance record exists, it is subject to disclosure, no matter how old. While NVRA may only require retention of list maintenance records for two years, no expiration is placed on the obligation to make those records that do exist available for public disclosure.

On February 9, 2017, the day before expert reports were due to be exchanged, Plaintiff received from Defendant by U.S. Mail the two CDs containing the following files:

1. .csv data files for redistricting mailings done in 01/2014.

2. .pdf of a chart listing notices sent to Commercial Printing.

   a. .csv files with these mailings.

3. .csv data file of a supposed "NCOA" mailing sent in 2015.

4. .pdf of all persons removed in 2014-2016.

5. .pdfs of invoices from Commercial Printing:

   a. 01/2014 redistricting mailers 1,091,337 sent.

   b. 05/2015 "NCOA" complete list 1,099,517 sent.

   c. 09/2015 vote by mail card sent to all actives.

   d. 05/2016 forwardable mailing sent to all actives.

      6.      .csv file for vote by mail sent in 05/2015.

      7.      .csv files for 2016 redistricting mailings.

Still, these files did not include the documents outlined in Plaintiff's discovery requests, to say nothing of ACRU's original January 26, 2016 letter. SUMF ¶ 16. In addition, on March 8, 2017, Defendant Snipes provided revised versions of the original certifications sent, revealing that the originals provided in February and December 2016 were allegedly inaccurate and incomplete in very significant respects. SUMP ¶ 17.

Discovery closed on March 10, 2017, and ACRU still has not received or been given the opportunity to inspect "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" as required by 52 U.S.C. § 20507(i). More than a year after ACRU's original letter requesting disclosure of various list maintenance records, Defendant Snipes has failed to provide them. Worse, Defendant Snipes continues to deny access to entire categories and time periods of records related to her list maintenance programs and activities.

None of these facts are in dispute.

## IV.    Argument

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for the motion" and identifying those portions of the record that "demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the

moving party has established the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and by his own "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party must rely on more than conclusory statements of allegations unsupported by facts. *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

As the record shows, Defendant has not provided disclosure of all requested records related to her voter registration and voter list maintenance activities and programs.

### B. Defendant Snipes Failure to Provide Documents and Inspection of All List Maintenance Records Is a Violation of Section 8.

Defendant Snipes is in violation of Section 8 because she has failed to make available for public inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" as required by 52 U.S.C. § 20507(i).

ACRU's records claim is ripe for review and judgment by the Court.

Section 20507(i)(1) of the NVRA provides that election officials "shall make available for inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." Courts have held that this provision unquestionably "provides a public right to information." *Project Vote v. Long*, 752 F. Supp. 2d 697, 703 (E.D. Va. 2010), *aff'd* 682 F.3d 331 (4th Cir. 2012). Courts have also held that this provision applies to the local election official responsible for list maintenance activities. *Id.* at 712. The simple fact of failing to provide access to records is sufficient to provide a cause of action under this provision. *Id.* at 703. The public records provision "embodies Congress's conviction that Americans who are eligible under law to

9

vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies. . . . [T]his provision mandates disclosure of the records requested by [Plaintiff]." *Project Vote*, 682 F.3d at 334-35. This case embodies precisely such a situation.

ACRU has provided adequate—and, in fact, repeated—notice to Defendant Snipes regarding its records and list maintenance failures claims. ECF No. [64] at 11-12, 17. Defendant Snipes has not provided copies of or permitted inspection of "*all records* concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." ECF No. [64] at 17 (emphasis in original). Therefore, this Court should find Defendant Snipes in violation of ACRU's right to public information under Section 8.

The overwhelming weight of authority supports granting Plaintiff's motion for summary judgment and Plaintiff's rights under the NVRA to inspect the requested documents. Under similar circumstances, the United States District Court for the Eastern District of Virginia, the Fourth Circuit, and other federal courts found that public inspection and information rights entitle a plaintiff to summary judgment. *See Project Vote v. Long*, 682 F.3d 331, 334-335 (4th Cir. 2012) (affirming summary judgment in favor of plaintiff NVRA records requestor); *Project Vote/Voting for America v. Long*, 752 F. Supp. 2d 697, 703-704 (E.D. Va. 2010) (denying defendants' 12(b)(6) motion in NVRA public inspection case); *Project Vote/Voting for America v. Long*, 813 F. Supp. 2d 738, 742-43 (E.D. Va. 2011) (granting summary judgment for plaintiff/requestor in NVRA public inspection rights case); *Project Vote v. Kemp*, No. 1:16-cv-2445-WSD, 2016 WL 5092512, ___ F. Supp.3d ___, *11-14, (N.D. Ga., Sept. 20, 2016) (denying defendant's motion to dismiss in NVRA public inspection case and granting injunctive

relief to plaintiff records requestor).

There can be no debate that "the NVRA provides a public right to information." *Project Vote/Voting for America*, 752 F. Supp. 2d at 703. Plaintiffs therefore "need show [no] more than that they sought and were denied specific agency records." *Id.* at 703 (internal citations omitted) (brackets in original). The two *Project Vote* rulings in the same litigation regarding public inspection rights under the NVRA by the United States District Court for the Eastern District of Virginia as well as the Fourth Circuit's affirmation in *Project Vote* strongly support granting summary judgment for ACRU here. In *Project Vote*, plaintiff sought voter registration and list maintenance records, namely voter registration forms. *Id.* at 699. All three opinions by the district court and Fourth Circuit Court of Appeals in *Project Vote* support ACRU's current Motion.

In this case, ACRU seeks records specifically related to activities aimed at ensuring the accuracy of the official lists of eligible voters. The "process by which the Commonwealth determines whether a person is eligible to vote certainly falls within the purview of the federal statute, as such a process, by its very nature, is designed to ensure that the Commonwealth's lists are current and accurate." *Project Vote*, 752 F. Supp. 2d at 706.

In granting summary judgment to the plaintiff-record requestor, the district court in *Project Vote* again interpreted the NVRA public inspection rights broadly. A "program or activity covered by the Public Disclosure Provision is one conducted to ensure that the state is keeping a 'most recent' and errorless account of which persons are qualified or entitled to vote within the state." *Project Vote*, 813 F. Supp. 2d at 742 (internal citation omitted). The various classes of information sought by ACRU here are analogous with what the *Project Vote* court held is subject to disclosure under NVRA.

11

In entering injunctive relief for the requesting plaintiff in *Project Vote*, the United States District Court for the Eastern District of Virginia ordered the release of all requested information, save for social security numbers, and ordered that "the defendants will need to remove language on Virginia's voter registration application that claims the application is not subject to public disclosure." *Id.* at 746. Thus, the district court found that there could be no genuine issue of material fact when a defendant election official denies public inspection rights to any list maintenance record or voter registration form that does not include social security numbers and granted the plaintiff summary judgment.

The Fourth Circuit Court of Appeals affirmed the district court's denial of the defendant's motion to dismiss and grant of summary judgment to a plaintiff requestor under NVRA. *Project Vote*, 682 F.3d at 334-335.

> Finally, as explained above, Section 8(i)(1) of the NVRA mandates public disclosure of voter registration activities. It generally requires states to make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.

*Id.* at 334 (internal citations and quotations omitted). The court rejected the argument that only "voter removal" records were subject to disclosure and held the NVRA had a broad scope. "First, the process of reviewing voter registration applications is a 'program' and 'activity.' Under Virginia law, election officials must examine completed voter registration applications and register applicants that possess the necessary qualifications." *Id.* at 335.

The NVRA includes language that gives public disclosure obligations an expansive reach. "Finally, the fact that [Section 8(i)(1)] very clearly requires that '**all records**' be disclosed brings voter registration applications within its reach." *Project Vote*, 682 F.3d at 336 (emphasis added). The Fourth Circuit went further on this point: "As this court has recognized, 'the use of

the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth.'" *Id.* (brackets in original). "Because the NVRA requires disclosure of all materials described in Section 8(i)(1), including voter registration records, defendants must permit inspection of the completed applications, as instructed by the district court." *Id*. at 337. Nor was the court willing to entertain that a list in the NVRA of some documents subject to disclosure precluded documents not listed. "First, the statute clearly states that 'all records' falling under Section 8(i)(1) must be publicly disclosed, not just those explicitly listed in Section 8(i)(2). Moreover, as the district court recognized at the motion to dismiss hearing, the term 'shall include' sets 'a floor, not a ceiling.'" *Project Vote*, 682 F.3d at 337 (internal citations omitted). The same reasoning should apply to the two-year retention requirement. That is a floor, not a ceiling. If an election official maintains records for longer than two years, they must be subject to disclosure.

     Finally, electronic records housed within databases are also subject to the public disclosure and inspection provisions of the NVRA. To the extent that any records that have not been disclosed by Defendant Snipes are housed electronically, they are subject to the NVRA's disclosure provision. A district court denied a motion to dismiss and granted summary judgment for a plaintiff-NVRA requestor in the recent case of *Project Vote v. Kemp*, No. 1:16-cv-2445-WSD, 2016 WL 5092512, ___ F. Supp.3d ___, *11-*14, (N.D. Ga., Sept. 20, 2016). There, the court rejected the defense that electronic records are not subject to disclosure. "Interpreting 'records' to exclude information contained within electronic databases also would allow States to circumvent their NVRA disclosure obligations simply by choosing to store information in a particular manner. Given the ubiquity and ease of electronic storage, this would effectively

render Section 8(i) a nullity." *Id.* at *12. The district court accordingly denied a motion to dismiss and entered injunctive relief against the defendant ordering the disclosure of records.

    **C.    Defendant Snipes Has Not Provided Public Disclosure of All Records Requested by ACRU in January 2016.**

In sum, the following registration and list maintenance records have not been provided, thus entitling Plaintiff to summary judgment on Count II of the Complaint:

(1)    Updated registration data since the publication of the 2014 Election Assistance Commission data from the November 2014 election. This is important because a month-by-month view of the total registration numbers in Broward County is relevant to an analysis of the registration rate.

(2)    The number of notices sent to inactive voters since the publication of the 2014 EAC Report including the date, scope, and contents of any mailing sent to all registered voters. Mailing to all registered voters, and not just to active voters, is an important component of list maintenance.

(3)    The total number of voters registered in Broward County as of the date of any response.

(4)    Any records indicating the use of citizenship or immigration status for list maintenance activities.

(5)    All list maintenance records including federal voter registration forms containing citizenship eligibility questionnaires for the last 22 months. These would contemplate:

    (a)    Copies of all invoices and statements from any outside vendors Defendant Snipes works with in doing list maintenance mailings;

    (b)    Records of complaints received regarding list maintenance issues;

  (c)  Communications from and to the Florida Secretary of State's office, including the Florida Bureau of Voter Registration Services, concerning list maintenance in Broward County;

  (d)  Records related to United States Postal Service National Change of Address database requests and usage; and,

  (e)  A current list of all registered voters (active and inactive).

## V. Conclusion

For the foregoing reasons, ACRU respectfully requests that the Court enter summary judgment in its favor on Count II of its First Amended Complaint against Defendant Snipes and declare Defendant in violation of 52 U.S.C. § 20507(i) for failure to provide documents and inspection of all records related to list maintenance programs. ACRU also respectfully requests that the Court enter an injunction requiring Defendant Snipes to provide inspection or disclosure of all registration and list maintenance records.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment:

1.  Declaring that Defendant is in violation of 52 U.S.C. § 20507(i) for failure to provide documents and inspection of all records related to list maintenance programs;

2.  Ordering Defendant to substantively and completely respond to Plaintiff's written request for records concerning her implementation of programs and activities to ensure the accuracy and currency of Broward County's voter registration list and provide access to all election records;

      3.      Ordering Defendant to pay Plaintiff's reasonable attorney's fees related to Count II of the First Amended Complaint, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c); and

      4.      Granting Plaintiff further relief that this Court deems just and proper.

Dated: March 16, 2017

/s/ Mathew D. Gutierrez
William E. Davis (Fla. 191680)
Mathew D. Gutierrez (Fla. 0094014)
FOLEY & LARDNER LLP
Two South Biscayne Boulevard, Suite 1900
Miami, FL 33131
(305) 482-8404 (telephone)
(305) 482-8600 (fax)
wdavis@foley.com
mgutierrez@foley.com

J. Christian Adams*
Joseph A. Vanderhulst*
PUBLIC INTEREST LEGAL FOUNDATION
32 East Washington Street, Suite 1675
Indianapolis, IN 46204
(317) 203-5599 (telephone)
(888) 815-5641 (fax)
adams@publicinterestlegal.org
jvanderhulst@publicinterestlegal.org

H. Christopher Coates*
LAW OFFICE OF H. CHRISTOPHER COATES
934 Compass Point
Charleston, SC 29412
(843) 609-7080 (telephone)
curriecoates@gmail.com

* *Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I certify that on March 16, 2017, I caused the foregoing to be filed with the United States District Court for the Southern District of Florida via the Court's CM/ECF system, which will serve all registered users.

                                                  /s/ Mathew D. Gutierrez