# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF
# FLORIDA FORT LAUDERDALE DIVISION

| | |
|---|---|
| AMERICAN CIVIL RIGHTS UNTION, <br> In its individual and corporate capacities, <br><br> Plaintiff, <br><br> v. <br><br> BRENDA SNIPES, in her official capacity <br> as the SUPERVISOR OF ELECTIONS <br> of BROWARD COUNTY, <br> FLORIDA, <br> Defendant, <br><br> v. <br><br> 1199SEIU UNITED HEALTHCARE <br> WORKERS EAST, <br><br> Intervenor-Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Case No. 16-cv-61474 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANT BRENDA SNIPES' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW AS TO COUNT II OF PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, DEFENDANT DR. BRENDA SNIPES (hereinafter "Snipes" or "Defendant Snipes"), in her official capacity as the Supervisor of Elections of Broward County, Florida, by and through the undersigned and files this Motion for Summary Judgment on Count II of the Plaintiff's First Amended Complaint and says:

## MOTION FOR SUMMARY JUDGMENT

Defendant Dr. Brenda Snipes ("Snipes"), in her official capacity as Supervisor of Elections in Broward County, Florida, moves this Court for Summary Judgment as to Count II of Plaintiff's First Amended Complaint. Snipes submits that there are no genuine issues of material

fact related to Count II and it is entitled to Summary Judgment as a matter of law. The grounds for this motion are set forth below.

## MEMORANDUM OF LAW

Summary judgment is appropriate when the Court, in view of the complete record, finds that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986).

The National Voter Registration Act ("NVRA") provides:

***Public disclosure of voter registration activities***
*(1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.*

*(2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) of this section are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.*

*52 U.S.C. § 20507(i)(1)*

It is undisputed that the Broward SOE has a duty to maintain records and make such records available for public inspection. In the case at bar, Defendant Snipes has met and exceeded the spirit of the NVRA law in the way of compliance. To date, thousands of public records have been produced to Plaintiff, pursuant to various public records requests, with Plaintiff citing NVRA requirements. *See, Affidavit of Jorge L. Nunez attached as Exhibit "A."* At all relevant times, Snipes has adhered to retention and disclosure requirements contemplated by the NVRA

statute. At this time, there are no documents requested and available from Defendant Snipes that has not already been provided. (*See, Affidavit of Jorge L. Nunez, attached as Exhibit "A" citing numerous records provided*). Any documents that Plaintiff believes it does not have are a part of the VR System for which Plaintiff has not performed any due diligence to understand.

It is not Plaintiff's intention to simply force compliance with NVRA laws. To the contrary, it is Plaintiff attempts to "game" the NVRA law by seeking and pursuing less information than is actually available and then claiming that Snipes is somehow negligent in her duty to produce documents. Plaintiff does not operate with clean hands and its actions seek only to harass Snipes.

Plaintiff has made little effort to determine how the VR System stores computer documents relating to NVRA. For instance, on or about January 31, 2017, Snipes responded as a apart of her answers to Plaintiff's First Set of Requests for Production of Documents as follows:

*REQUEST FOR PRODUCTION NO. 12: Written policies, manuals, directives, and procedures concerning your programs to maintain an accurate voter registration list and conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters.*

<u>**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**</u>
***Objection on the grounds that user guides are contained within the VR System for which <u>the VR System third party contracted vendor considers confidential and proprietary information requiring court intervention for a final determination.</u>  Other written directives are contained within relevant Florida Statutes regarding list maintenance.***

ECF No. (111-2) at 8.

Plaintiff has never pursued the manuals and has avoided taking the depositions of anybody associated with the computer system operations.

On or about February 9, 2017, Snipes produced her *Third Supplemental Initial Disclosures Pursuant to F.R. C. P. 26 (a) (See attached Exhibit "B")*. This document included the name of Computer expert Charles Vasquez (had also previously been included) as well as the name, number and address for Wren Fowler, Voter Focus Product Manager, who is connected with the computer system. *Id.* No attempt has ever been made to depose either of these computer technicians who have extensive knowledge of computer system operations as related to NVRA requirements for election officials. On the following day, February 10, 2017, a more through description of Mr. Wren Fowler's knowledge and background was produced -- so that there would be no question that he should be considered an important witness. Specifically, the following description was produced:

*Wren Fowler,*
*Voter Focus Product Manager (address and number omitted here)*

*Summary of evidence from this witness will include:*
*The database process for generating notices to voters as a part of list maintenance activities and NVRA; evidence regarding how the list system performance and storage operates within the VR Systems; testimony regarding the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters within the VR Systems. Additional testimony will provide how lists of the names and addresses of all persons to whom confirmation mailings are preserved and the integrity thereof; and all other related information to that described above.*

*(See Attached Exhibit "C")*

On or about January 13, 2017, Plaintiff had the opportunity to conduct a computer inspection of the VR System containing a great majority of the records related to NVRA disclosure requirements. (*See, Affidavit of Jorge L. Nunez, attached as Exhibit "A"*). Rather than taking advantage of the scheduled time for inspection, Plaintiffs' attorneys used their time to attempt negotiation of sending a "monitor" from their organization to shadow SOE employees. They

wasted valuable time pursuing this effort rather than learn about the computer system and conduct an inspection as permitted.  (*See, Affidavit of Jorge L. Nunez); See Also Affidavit of Brenda Snipes, ECF NO. (129-2) at 2-3.*

Although each and every SOE employee who was deposed by Plaintiff cited Jorge Nunez as the person with the most knowledge about the computer system operations for purposes of NVRA, (*See Attached Exhibits D and E as deposition testimony from two witnesses Dr. Brenda Snipes and Mary Hall*) Plaintiff has refused to take the deposition of Jorge Nunez, the person who best knows the how NVRA related documents are stored.   Plaintiffs have used the authority of NVRA to essentially bully Snipes by causing office disruption with an intent to unlawfully seek fees rather than documents proving that NVRA compliance has occurred.  Hence, Plaintiffs entire lawsuit is a sham.

By way of history, Defendant Snipes received a letter dated January 26, 2016 from Plaintiff.  The letter is identical to letters sent by Plaintiff to other large urban counties, *See Excepts of Deposition Transcript from Susan A. Carleson, Plaintiff's Corporate Representative, President and Chairman, ECF No. [129-1] at 2-3.*  The January 26, 2016 letter makes note that "it would be helpful if [Defendant] could provide" certain documents.  Carleson's name appears at the bottom of the page and the document is unsigned ECF No. [12-1] at 3.  Most of the items listed in the letter reference documents not kept in the regular course of business by Defendant Snipes' office or the items require that Defendant infer additional information not set forth in the request.  The letter was not the typical type of public records document as it threatens litigation.  ECF No. [12-1] at 2.   The letter also contained various inaccuracies and implied that the

Election Assistance Commission, a resource clearinghouse, or the Secretary of State had reported information that was adverse to Broward County -- a statement that is not true. *Id.*

In response to Plaintiff's letter, Defendant Snipes sent a letter dated February 8, 2016 where she included various *Certification of Eligibility Records Maintenance and Certification of Address List Maintenance Activities* forms.  Due to the fact that the letter involved the threat of litigation, the undersigned was copied. ECF No. [12-2].  Defendant provided the name and contact information for the Defendant's General Counsel so that the scheduling of an inspection could be conducted.

Days later, Defendant Snipes took a call from a gentleman who claimed to be the legal representative for Plaintiff for purposes of an inspection.  Once again, Snipes provided the contact information for the Defendant's General Counsel in order to coordinate inspection and follow-up *(See Affidavit of Defendant Snipes)* ECF No. [129-2] at 2-3.  At no time did Defendant Snipes refuse to provide documents or allow for an inspection of documents.

Snipes explained that an inspection meeting needed to be coordinated with the undersigned attorney given the threat of litigation and the fact that the caller was an attorney.  No further conversation took place on the date of the call other than a mention that there would be a cost.  No call was ever made for the coordination of an inspection between the Plaintiff and Defendant.  A lawsuit was filed against the Defendant on June 27, 2016.

Defendant Snipes has been made aware through training conducted by the General Counsel's Office that a lawyer may not communicate with officers, directors, or managers of a governmental entity about the subject matter of a specific controversy or matter when the lawyer "knows or has reason to know that a governmental lawyer is providing representation unless the

6

agency's lawyer first consents to the communication." *See Florida Bar Professional Ethics of the Florida Bar Opinion, 09-1, December 10, 2010.* Hence, any attorney communicating with Defendant Snipes after being written and subsequently told that she was represented by counsel would be violating the applicable Florida rules of ethics. Not even a lawyer appearing pro hac vice in this district can engage in "general practice." Snipes' response was appropriate and still within the spirit of NVRA because Plaintiff was not refused access to records or scheduling of an inspection to obtain all available records.

Plaintiff waited the requisite ninety (90) day period before suing Defendant without making a good faith attempt to arrange for an inspection of documents from the Defendant's database computer system and beyond. See, 42 U.S.C. §1973gg-9(b)(2). The aggressive attempts to avoid seeking an early inspection of documents, as described herein, combined with Plaintiff counsel's attempt to stall a response on repeated requests for an amendment to discovery documents speaks volumes and is evidence of Plaintiff's bad faith.

To show further intent to frustrate and avoid any clarity as to the discovery issue and NVRA, Plaintiff's lead counsel J. Christian Adams outlines a partisan **Primer on "Motor Voter": Corrupted Voter Rolls and the Justice Department's Selective Failure to Enforce Federal Mandates** http://www.heritage.org/election-integrity/report/primer-motor-voter-corrupted-voter-rolls-and-the-justice-departments#_ftn83. This article written by Adams explains how Section 8 contains "a powerful public records provision" and advocated that an efficient way of generating more NVRA lawsuits is to employ a public records strategy. Interestingly enough, Mr. Adams states in his article that "Section 8 does not define what constitutes a reasonable list maintenance program, and states that "in the 21-year history of the statute, no court has defined what constitutes a reasonable effort for a list maintenance program."

Plaintiffs seek to engage in harassment of the public records process as a means of intimidation and gamesmanship. Plaintiff attempts to turn its failure to engage Defendant Snipes into a "gotcha" for purposes of litigation strategy, not in keeping with the intent of the NVRA statute.

**Plaintiff Abandoned Its Notice Letter Request When It Filed Suit**

Since the time of the filing of the present action and up to the filing of Plaintiff's Motion for Partial Summary Judgment, Plaintiff took no effort to request or clarify documents that were referenced and a part of its "Notice Letter."

It is believed that no action was taken, in part, because the letter was deficient in its request for documents that would require creation (not in existence) and documents mentioning other documents that were not supplied. NVRA's "public disclosure" of voter registration activities requirement relates to records that are actually in existence. Again, it is undisputed that NVRA entitles Plaintiffs an opportunity to inspect, review and copy records, the statute relates to records that are in existence.

Some of the requests outlined in the notice letter was for the creation of new records, answered questions about records that were not provided or required the reviewer to guess the nature of the question. The Florida statutory obligation of the custodian of public records and logic would follow that the NVRA requirement is that records custodian provide access to, or copies of, public records that are in existence, "at any reasonable time, under reasonable conditions." A custodian is not required to answer interrogatory type questions and Defendant should not be permitted to avoid direct information on scheduling for which a lawsuit would then

ensue. The reason for the NVRA notice period is the give the responding party an opportunity to provide documents.

**STANDARD OF REVIEW**

A motion for summary judgment must be granted if the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A genuine issue of material fact exists only when "a reasonable jury could return a verdict [in favor of] the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Snipes has shown the absence of a genuine issue of material fact in Plaintiff's filing of Count II. "[I]f the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper." *Hawaiian Airlines, Inc. v. AAR Aircraft Servs., Inc.*, 167 F. Supp. 3d 1311, 1316 (S.D. Fla. 2016).

**CONCLUSION**

For reasons set forth herein the Defendant's Motion for Summary Judgment should be granted. There are no genuine issues of disputed material facts. Defendant Snipes prays that the Court grants Defendant's Motion for Summary Judgment as to Count 2.

| | |
|---|---|
| **For the Defendant**: | */s/ Burnadette Norris-Weeks* |
| | Burnadette Norris Weeks, Esq. |
| | BURNADETTE NORRIS WEEKS, PA |
| | 401 Avenue of the Arts |
| | Fort Lauderdale, FL 33311 |
| | Tel: (954) 768-9770 |
| | Fax: (954) 768-9790 |
| | Email: bnorris@bnwlegal.com; |

**SERVICE LIST**

*Counsel for Plaintiffs*

William E. Davis (Fla. 191680)
Mathew D. Gutierrez (Fla. 0094014)
FOLEY & LARDNER LLP
Two South Biscayne Boulevard, Suite 1900
Miami, FL 33131
T. (305) 482-8404
F. (305) 482-8600
Email: wdavis@foley.com
Email: mgutierrez@foley.com

J. Christian Adams
Joseph A. Vanderhulst
Kaylan L. Phillips
PUBLIC INTEREST LEGAL FOUNDATION
32 E. Washington, Suite 1675
Indianapolis, IN 46204
317-203-5599
F. (888) 815-5641
Email: adams@publicinterestlegal.org
Email: jvanderhulst@publicinterestlegal.org
Email: kphillips@publicinterestlegal.org

H. Christopher Coates
LAW OFFICE OF H. CHRISTOPHER COATES
934 Compass Point
Charleston, SC 29412
T. (843) 609-7080
Email: curriecoates@gmail.com

Kenneth A. Klukowski
AMERICAN CIVIL RIGHTS UNION
3213 Duke Street, #625
Alexandria, VA 22314
877-730-2278
Email: kklukowski@theacru.org

*Counsel for 1199SEIU United States Healthcare Workers East:*

Kathleen Marie Phillips
PHILLIPS RICHARD AND RIND, P.A.
9360 SW 72nd Street
Suite 283
Miami, FL 33173
305-412-8322
Fax: 412-8299
Email: kphillips@phillipsrichard.com

Stuart C. Naifeh
Cameron Bell
DEMOS
80 Broad Street, 4th Floor
New York, NY 10004
212-485-6240 (Office)
Email: snaifeh@demos.org
Email: cbell@demos.org

Katie Roberson-Young
Associate General Counsel
SERVICE EMPLOYEES INTERNATIONAL UNION
11601 Biscayne Blvd, Suite 209
Miami, Florida 33181>
Email: katherine.roberson-young@seiu.org