## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.  16-cv-61474-BLOOM/Valle

ANDREA BELLITTO and
AMERICAN CIVIL RIGHTS UNION,

       Plaintiffs,

v.

BRENDA SNIPES, in her official capacity
as the Supervisor of Elections of
Broward County, Florida,

       Defendant,

v.

1199SEIU UNITED HEALTHCARE
WORKERS EAST,

       Intervenor Defendant.

_____/

### <u>ORDER</u>

**THIS CAUSE** is before the Court upon a *sua sponte* review of the record.  On June 27,

2016, Plaintiff American Civil Rights Union ("Plaintiff" or "ACRU") and Andrea Bellitto

("Bellitto"),[1] one of ACRU's members, initiated these proceedings, bringing two claims against

Defendant Brenda Snipes ("Defendant" or "Snipes"), the Supervisor of Elections of Broward

County, Florida, under Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52

U.S.C. § 20507.[2]  *See* ECF No. [1].  Under Count I of its Amended Complaint, ACRU claims

that Snipes "has failed to make reasonable efforts to conduct voter list maintenance programs, in

_____

[1] All claims brought by Bellitto have since been dismissed based on Bellitto's lack of standing to bring suit.  *See* ECF No. [64].

[2] The Court refers to 52 U.S.C. § 20507 interchangeably as "Section 8," reflecting the statute's original location at Section 8 of Pub. L. 103-31, May 20, 1993, 107 Stat. 77.

violation of Section 8 of NVRA, 52 U.S.C. § 20507 and 52 U.S.C. § 21083(a)(2)(A) [Help America Vote Act]."  ECF No. [12] at ¶ 28.  Under Count II of the Amended Complaint, ACRU claims that Snipes "has failed to respond adequately to Plaintiffs' written request for data, [and] failed to produce or otherwise failed to make records available to Plaintiffs concerning Defendant's implementation of programs and activities for ensuring the accuracy and currency of official lists of eligible voters for Broward County, in violation of Section 8 of the NVRA, 52 U.S.C. § 20507(i)."  *Id.* at ¶ 33.  This Order concerns Count II—in particular, whether at this late stage this Court has jurisdiction to adjudicate that claim in the first place.  For the reasons explained below, the Court finds that it does not.

The genesis of this lawsuit stems from a brief series of interactions that took place between the President of ACRU, Susan A. Carleson ("Carleson"), and Snipes back in early 2016.  Those interactions were detailed in a prior Order that this Court entered on July 11, 2017, *see* ECF No. [182] (the "July 11, 2017 Order"), which denied the respective motions for partial summary judgment that had been filed by ACRU, Snipes, and Intervenor Defendant 1199SEIU United Healthcare Workers East,[3] *see* ECF Nos. [117], [145], [142].  Given their jurisdictional significance, the details of those interactions bear repeating here.

On January 26, 2016, Carleson sent a letter to Snipes notifying her that, based on ACRU's research, Broward County was "in apparent violation" of Section 8 of the NVRA.  ECF No. [12-1].  The letter explained that based on ACRU's comparison of publicly available information, Broward County at the time "ha[d] an implausible number of registered voters compared to the number of eligible living citizens."  *Id.* at 2.  The letter expressed ACRU's hope that the Broward County Supervisor of Elections' Office ("BCSEO") would work towards

---

[3] The Court previously granted a motion to intervene filed by Intervenor Defendant 1199SEIU United Healthcare Workers East.  *See* ECF Nos. [23], [29], [53].

compliance with Section 8 of the NVRA as well as ACRU's intention to file a lawsuit under the statute if such compliance was not achieved.  *Id.* at 3.  The letter also stated that if the information referenced therein was no longer accurate, "it would be helpful if [Snipes] could provide" certain categories of documents that the letter identified.  *See id.* at 3-4.  Citing Section 8 of the NVRA, the letter informed Snipes of the requirement that her office "make available for public inspection all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  *Id.* at 4.  The letter invited Snipes to call Carleson in order to arrange a time to discuss the matter and to arrange an inspection.  *Id.*

On February 8, 2016, Snipes responded to ACRU's letter with a letter of her own.  *See* ECF No. [12-2] at 1-2.  Among other things, Snipes' letter refuted the assertion that Broward County's voter rolls were filled with more voters than living persons residing in the county and included two types of BCSEO certifications spanning the previous several years—which the letter characterized as "documenting actions taken by [Snipes'] office to manage removal of voters no longer eligible to vote in Broward County."  *Id.*; *see also id.* at 3-23.  The letter closed by directing ACRU to BCSEO's General Counsel and BCSEO's website for any further information.  *Id.* at 3.  About two months after the exchange of letters, legal representatives of ACRU contacted Snipes via telephone on April 5, 2016, and the parties discussed the possibility of arranging a meeting as well as an inspection of the records ACRU requested in its January 26, 2016 letter.  Those efforts proved unfruitful, however, as no further communications (at least not written) between ACRU and Snipes took place in the nearly three months that passed before this lawsuit was filed on June 27, 2016.

As has been largely recognized throughout these proceedings, ACRU's January 26, 2016 letter is critical to jurisdiction in this case.  By way of background, Section 20510 of the NVRA governs the civil enforcement of Section 8, providing for enforcement by:

(a) Attorney General—The Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter.

(b) Private right of action—

1. A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved.

2. If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

3. If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2).

52 U.S.C. § 20510.  As the Court explained earlier in these proceedings, "[t]his Court's jurisdiction, therefore, stems directly from § 20510(b), and Plaintiffs' standing to bring suit depends upon compliance with the statute."  *Bellitto v. Snipes*, 221 F. Supp. 3d 1354, 1360-61 (S.D. Fla. 2016).  Consistent with that rationale, the Court granted in part a motion to dismiss filed by Snipes, dismissing only the claims brought by Bellitto as "Bellitto did not herself comply with § 20510(b)(1)'s notice prerequisite."  *Id.* at 1363.  Specifically, the Court explained that ACRU's January 26, 2016 letter "did not mention Bellitto 'by name' or even refer to ACRU members," and thus found that the letter was "too vague to provide … *an opportunity to attempt compliance* as to [Bellitto] before facing litigation."  *Id.* (emphasis added) (alteration in original)

(quoting *Scott v. Schedler*, 771 F.3d 831, 836 (5th Cir. 2014)).  As such, the Court held that Bellitto had "failed to meet her burden to establish standing to bring suit." *Id.*  Of course, at that time there appeared to be no dispute between the parties that the January 26, 2016 letter was sufficient to confer standing on ACRU itself—after all, it was ACRU's letter—and this case proceeded accordingly.

However, in its July 11, 2017 Order, the Court identified the following concern with respect to the NVRA's pre-suit notice requirement as it related specifically to Count II:

> The parties appear to be in agreement that the January 26, 2016 letter constituted sufficient notice for purposes of ACRU's failure to disclose claim under Count II. Nonetheless, and despite the issue having not been raised on summary judgment or at any other time during these proceedings, the Court questions whether the letter can constitute sufficient notice for purposes of ACRU's claim for failure to make reasonable efforts to conduct voter list maintenance programs under Count I *and* ACRU's failure to disclose claim under Count II. Specifically, the letter contemplated one potential NVRA violation, the violation claimed under Count I. *See* ECF No. [12-1] at 2 ("[T]he list maintenance requirements of Section 8 of the NVRA [] ensure that ineligible voters are not participating in the political process . . . . The American Civil Rights Union has [] taken on the task of notifying you of your county's violation."). The letter did not contemplate the NVRA violation claimed under Count II, nor could it have; being the first correspondence between ACRU and Snipes, the letter represents the first time ACRU requested list maintenance records from Snipes. In other words, although the letter notified Snipes of a potential NVRA violation for her alleged failure to make reasonable efforts to conduct voter list maintenance programs, as far as public disclosure is concerned, the letter merely requested for the first time Snipes' list maintenance records. *See id.* at 4 ("We would like to discuss with your office how to implement a remedial plan which could cure what appears to be a violation of Section 8 of the NVRA. We *also request* the opportunity to inspect the list maintenance documents outlined above.") (emphasis added). It would seem to follow, then, that Snipes was never provided written notice of the potential NVRA violation claimed under Count II or afforded 90 days after such written notice by which to cure the potential violation—the lapse of which gives rise to the private cause of action. *See* 52 U.S.C. §§ 20510(b)(1), (2).

ECF No. [182] at 37-38 n.17 (emphasis in the original).  The parties' apparent agreement as to the sufficiency of ACRU's notice letter for purposes of both Counts I and II notwithstanding, the Court now addresses its jurisdictional concern head-on.  *See generally Miccosukee Tribe of*

*Indians of Florida v. United States*, 698 F.3d 1326, 1332 (11th Cir. 2012) ("[E]very court has an independent duty to review standing as a basis for jurisdiction *at any time*, for every case it adjudicates.") (quoting *Fla. Ass'n of Med. Equip. Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th Cir.1999)) (emphasis added); *Mulkey v. Land Am. Title Ass'n, Inc.*, 345 F. App'x 525, 526 (11th Cir. 2009) ("Plaintiffs [bear] the burden of establishing jurisdiction; and a district court should not assume jurisdiction.") (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 (1998)); *Steel Co.*, 523 U.S. at 118 (explaining that a court cannot  assume jurisdiction to reach the merits of a case).

Following the Court's July 11, 2017 Order, and in anticipation of trial, the parties appeared before the Court at a pre-trial conference on July 18, 2017.  In light of the above mentioned concern, the Court sought clarification from ACRU's counsel regarding the relationship between ACRU's notice letter and its failure to disclose claim under Count II.  The following exchange ensued:

> The Court:    I would like to address an issue relating to Count 2. And that is, I'm certain that the parties had an opportunity to review the Court's order relating to the cross-motions for summary judgment, as well as the motion for summary judgment as to Count 1. And my question is actually directed to the Plaintiff ACRU, and that is with regard to the notice that was provided relating to the lack of providing access to certain requested records. Were there any records that were requested before January 26th . . . ?
>
> Counsel:    Your Honor, no. The first request was in the notice letter of January 26th.
>
> The Court:    [B]oth sides have cited to the Kemp and Long cases in support of the summary judgment. And both of those cases, as we know, involved a refusal to allow access to certain requested records. And the notices in those cases were premised on that refusal that allow this 90-day period in which the defendant had to cure.
>
> Here, is it the Plaintiff's position that the January 26th, 2016 letter is, in fact, the notice?

Counsel:        Yes, it is, your honor.

Despite the significance of that clarification and the Court having clearly expressed its related

jurisdictional concern in the July 11, 2017 Order, Snipes' counsel interjected, but only to reassert

Snipes' position that she had been cooperative with ACRU's records requests all along.

In any event, under the circumstances of this case, that ACRU's notice letter admittedly

provides no notice of the specific failure to disclose violation claimed in Count II (because it

instead represents the first time ACRU ever requested records from Snipes) is dispositive for

purposes of jurisdiction as to Count II.  In the Court's view, a plain reading of 52 U.S.C. § 20510

reflects that the pre-suit notice requirement thereunder is violation specific.  *See* 52 U.S.C. §§

20510(b)(1)-(2) ("A person who is aggrieved by *a violation* of this chapter may provide written

notice of *the violation* to the chief election official . . . . If *the violation* is not corrected . . ., the

aggrieved person may bring a civil action . . . for declaratory or injunctive relief *with respect to*

*the violation*.") (emphasis added).   That view is bolstered by consideration of the specific

purpose of the notice requirement that is enumerated in § 20510—that is, to allow the potential

NVRA defendant a curative period during which he or she may correct the violation identified,

thereby coming into compliance with the NVRA.  *See, e.g.*, *Scott*, 771 F.3d at 836 ("It is also

apparent to us that the NAACP's notice letter was too vague to provide [the defendant] with an

opportunity to attempt compliance as to [the individual plaintiff] before facing litigation. In the

letter, the NAACP alleged NVRA violations only in broad terms and certainly did not mention

[the individual plaintiff] by name. . . . The letter's surveys and statistics put [the defendant] on

notice neither that the violations concerned the declination form nor that they involved [the

individual plaintiff].") (internal citation and quotation marks omitted).  Inescapably, that curative

period is likewise violation specific.  It is not enough that a potential NVRA defendant has

general notice that an individual or organization believes it to be in violation of the NVRA before facing litigation. *See Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 922 (S.D. Ind. 2012) (explaining that an NVRA notice is sufficient if it "sets forth the reasons for [the] conclusion" that a defendant failed to comply with the NVRA).  Similarly, notice as to one potential NVRA violation is not the equivalent of notice as to all potential NVRA violations. Rather, a potential NVRA defendant must have notice of exactly what violation or violations have been alleged in order to have a meaningful opportunity to attempt complete compliance before facing litigation.[4]

In this case, ACRU alleges two separate and distinct violations of the NVRA.  However, ACRU has in essence sought to "piggyback" its claim under Count II on its January 26, 2016 notice letter, which only provides notice of the NVRA violation alleged in its claim under Count I. *Scott*, 771 F.3d at 836 (holding that the individual plaintiff could not "piggyback" on the NAACP's notice letter).  Put simply, although the letter notified Snipes of a potential NVRA violation for her alleged failure to make reasonable efforts to conduct voter list maintenance

---

[4] Though the Eleventh Circuit has not addressed this issue within the context of the NVRA, it has expounded upon the opportunity to comply that is mandated in the similarly worded pre-suit notice requirement for citizens suits under the Clean Air Act.   In *Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 502 F.3d 1316, 1328 (11th Cir. 2007), the Eleventh Circuit agreed with the district court that the notice letter provided by the plaintiff organization was "the notice equivalent of a 'shotgun' complaint because it broadly alleged daily violations of an entire set of regulations without specifically identifying the individual alleged violations and dates." (internal quotation marks omitted). The Eleventh Circuit reasoned:

> We conclude, as the district court did, that National Parks' notice letter was inadequate because it failed to provide enough information to permit TVA to identify the allegedly violated standards, dates of violation, and relevant activities with the degree of specificity required by the regulations. *The notice requirements are strictly construed to give the alleged violator the opportunity to correct the problem before a lawsuit is filed.*

*Id.* at 1329 (emphasis added).  Like the notice requirement of the Clean Air Act, "[t]he apparent purpose of the [NVRA] notice provision is to allow those violating the NVRA the opportunity to attempt compliance with its mandates before facing litigation."  *Georgia State Conference of NAACP v. Kemp*, 841 F. Supp. 2d 1320, 1335 (N.D. Ga. 2012).

programs (Count I), as far as public disclosure is concerned, the letter merely requested for the first time Snipes' list maintenance records.  *See* ECF No. [182] at 37-38 n.17.  It follows, then, that Snipes was never provided with written notice of the potential NVRA violation claimed under Count II.  Equally important, Snipes was not afforded the curative period following such written notice by which to cure that potential NVRA violation.

The point is neatly illustrated by *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016), a case which ACRU relied upon extensively in seeking summary judgment on Count II, though on issues unrelated to notice.  The only claim brought by the plaintiff in *Kemp* was a failure to disclose claim under the NVRA, and at issue was the sufficiency of the plaintiff's notice letter.  The plaintiff had requested from the defendant a variety of records on October 30, 2014.  *Id.* at 1347.  Thereafter, the defendant produced certain records in response, but the plaintiff viewed that production as inadequate.  *Id.*  Importantly, the plaintiff's request and the defendant's response *preceded* the notice letter that plaintiff sent the defendant on July 6, 2015— "nearly a year before th[e] action was filed[.]"  *Id.*  In finding that the plaintiff's notice letter satisfied the notice requirement of 52 U.S.C. § 20510(b)(1), the court observed that the notice letter "described the records Plaintiff requested on October 30, 2014 *and sought to explain why Defendant's productions failed to satisfy those requests*[,]" such as the fact that the defendant's productions omitted a number of documents.  *Kemp*, 208 F. Supp. 3d at 1347-48 (emphasis added).  Here, by contrast, there was never any request for records by ACRU—and by extension a response to such request by Snipes—prior to ACRU's notice letter.  Instead, as counsel for ACRU stated at the pre-trial conference, "the notice was the request."  However, to allow a purported NVRA notice letter to serve such a dual purpose—that is, make an initial request for records and at the same time notify the records keeper of his or her failure to satisfy that

request—simply because it provides sufficient notice of a separate NVRA violation would, in the Court's view, defy logic and frustrate the purpose of the NVRA's notice provision (to provide an opportunity to attempt compliance before litigation).[5]

For all of these reasons, the Court finds that although ACRU's notice letter constitutes sufficient notice for purposes of ACRU's claim for failure to make reasonable efforts to conduct voter list maintenance programs under Count I, the notice letter does not constitute sufficient notice for purposes of ACRU's failure to disclose claim under Count II.  As ACRU's notice letter represents the only written correspondence that ACRU provided Snipes prior to the commencement of this lawsuit,[6] Snipes was never provided written notice of the potential NVRA violation claimed under Count II, nor was she afforded 90 days after such written notice by which to cure that potential violation—as required under 52 U.S.C. §§ 20510(b)(1), (2). Furthermore, because it is the lapse of the curative period contemplated in 52 U.S.C. § 20510(b)(2) that gives rise to the private cause of action, no standing was ever conferred upon ACRU to bring its failure to disclose claim—its standing to bring the claim for failure to make reasonable efforts to conduct voter list maintenance programs notwithstanding.  *See Scott*, 771 F.3d at 835 ("No standing is therefore conferred if no proper notice is given, since the 90-day period never runs.") (quoting *Georgia State Conference of NAACP*, 841 F. Supp. 2d at 1335); *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A]

---

[5] To illustrate the point further, a sufficient notice letter with respect to Count II in this case could have been a second letter sent by ACRU in which ACRU expressed its position that the BCSEO certifications provided by Snipes in her February 8, 2016 response letter did not satisfy all of the requests ACRU made in its initial January 26, 2016 letter.  The subsequent attempt (or non-attempt) for compliance by Snipes would have then occurred prior to litigation, rather than after the commencement, and throughout the course, of litigation—as has been the case here.  The NVRA's notice requirement contemplates the former.

[6] The parties established this in their respective renditions of the undisputed material facts that they submitted in support of summary judgment.

Case No.  16-cv-61474-BLOOM/Valle

plaintiff must demonstrate standing separately for each form of relief sought."). Consistent with both the Fifth Circuit in *Scott* and the Northern District of Georgia in *Georgia State Conference of NAACP*, and as the Court has previously explained during these proceedings, this lack of standing has a preclusive effect on this Court's jurisdiction. *See Bellitto*, 221 F. Supp. 3d at 1362 ("The plaintiff has the burden to clearly and specifically set forth facts sufficient to satisfy Art. III standing requirements. In the context of standing to bring a private action pursuant to 52 U.S.C. § 20510(b), failure to provide notice is fatal.") (quoting *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972), and *Scott*, 771 F.3d at 836) (internal citation and quotation marks omitted).

Accordingly, it is **ORDERED AND ADJUDGED** that **Count II** is **DISMISSED**.

**DONE and ORDERED** in Miami, Florida, this 21st day of July, 2017.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record

11